The Honorable Marco A. Hernandez

**Timothy C. Rote**

24790 SW Big Fir Rd.
West Linn, Oregon 97068
Telephone (503) 702-7225

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **Max Zweizig**<br><br>Plaintiff,<br><br>v.<br><br>**Northwest Direct Teleservices, et al,**<br><br>Defendants. | Case No.        3:15-cv-02401-HZ<br><br>MOTION AND MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION) |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 4

II.   FACTUAL BACKGROUND .............................................................................. 4

III.  STATUTORY BASIS FOR MOTION............................................................... 8

IV.   ARGUMENT ...................................................................................................... 9

   A.   Zweizig's Claims Arise from Rote's Protected Conduct............................................ 9

      1. Rote' Statements Were Made in the Exercise of his Constitutional Right of Free
      Speech. ................................................................................................................. 10

      2. Rote' Statements Relate to "An Issue of Public Interest" ........................................ 10

   B.   Zweizig Must Present Substantial Evidence That He Will Prevail On His Claim ... 12

      1. The First Amendment Absolutely Protects Rote From Liability……………………12

         a. The Blog is Rote's Opinion................................................................................. 14

         b. Any False Implications Are Not Actionable ...................................................... 16

      2. The False Light Claim Fails................................................................................. 17

      3. Intentional Infliction of Emotional Distress Also Fails                    18

      4. Interference with Prospective Employment Is Not Actionable               19

   C.   The Claims Against the Other Defendants Should be Dismissed............................ 20

V.   CONCLUSION.................................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*Babick v. Or Arena Corp.*, 333 Or 401 (2002) ............................................................. 16

*Card v. Pipes*, 398 F. Supp 2d, 1126 (Or. Dist 2004)................................................10, 16

*ComputerXpress v. Jackson*, 93 Cal.App.4th 993 (Cal. App. 2001) ............................. 9

*Cron v. Zimmer*, 255 Or. App. 114 (2013) .................................................................... 16

*Dean v. Guard Pub. Co., Inc.*, 73 Or. App. 656 (1985).................................................. 14

*DuBoff v. Playboy Enterprises Int'l, Inc.*, 2007 WL 1876513 (D. Or. June 26, 2007)................. 16

*Gardner v. Martino*, 2005 WL 3465349 (D. Or. September 19, 2005)......................... 10

*Holland v. Lentz*, 239 Or. 332 (1964) ............................................................................ 16

*House v. Hicks*, 218 Or. App. 348 (2008)...................................................................... 17

*Hustler Magazine, Inc v. Falwell*, 485 U.S. 46 (1988)................................................... 12

*In re Anonymous Online Speakers*, 661 F.3d 1168 (9th Cir. 2011)................................. 9

*Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781 (9th Cir. 1980) ....... 14

*Ingels v. Westwood One Broadcasting Services, Inc.*, 28 Cal.Rptr.3d 933 (Cal. App. 2005) ........ 8

*Lewis v. Time*, 710 F.2d 549 (9th Cir. 1984) ...................................................... 13, 14,15

*Ludwig v. Superior Court*, 43 Cal.Rptr.2d 350 (Cal. App. 1995)................................... 8

*Magenis v. Fisher Broad., Inc.*, 103 Or. App. 555 (1990)...............................................15

*Mann v. Quality Old Time Service, Inc.*, 15 Cal.Rptr.3d 215 (Cal. App. 2004)......................... 8

*McGanty v. Staudenraus*, 321 Or 532 (1995).......................................................... 16, 17

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ..................................................... 12

*NAACP v. Clairborne Hardware*, 458 U.S. 886 (1982) ................................................. 12

*New York Times v. Sullivan* 376 U.S. 254 (1964) .......................................................... 11

*Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487 (1999)........................18

*Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (Cal. App. 2008)..................... 10

*Partington v. Bugliosi*, 56 F.3d 1147 (9th Cir. 1995)................................................12,13

*Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724 (1st Cir. 1992)........................ 14

*Redco Corp. v. CBS, Inc.*, 758 F.2d 970 (3d Cir. 1985) ............................................... 14

*Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 845 (1997) ....................................... 9

*Rivero v. AFSCME*, 105 Cal. App. 4 913 (Cal. App. 2003) ......................................... 10

*Seelig v. Infinity Broadcasting Corp.*, 119 Cal.Rptr.2d 108 (Cal. App. 2002)....................... 8, 10

*Sipple v. Foundation for National Progress*, 71 Cal. App. 4th 226 (Cal. App .1999) ................. 11

*Snyder v. Phelps*, 131 S. Ct. 1207 (2011) ...................................................................... 12

*Tague v. Citizens for Law and Order, Inc.*, 75 Cal. App. 3d Supp. 16 (Cal. App. 1977)............. 10

*Thompson v. Tel. Data Sys., Inc.*, 130 Or App 302 (1994)............................................ 18

*Time Inc. v. Hill* 385 U.S. 374 (1967)................................................................... 12, 15

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ............................... 8, 19

*Wilbanks v. Wolk*, 121 Cal. App. 4th 883 (Cal. App. 2004)......................................... 9

## Statutes

47 USC § 227...................................................................................................... 10

ORS § 31.150.......................................................................................... 8, 9, 10, 19

## Other Authorities

Restatement (2d) of Torts § 566 cmt. c (1965) ..................................................... 13, 16

## I.    INTRODUCTION

Defendant Timothy Rote submits this Memorandum in Support of Special Motion to Strike, filed pursuant to Oregon's anti-SLAPP statute, ORS § 31.150 to 31.155. Rote has moved to strike Plaintiff Zweizig's claims against him on the grounds that those claims are based solely on statements made by Rote in the furtherance of his constitutional right of free speech in connection with an issue of public interest.

Defendant Rote understands that there is a motion to dismiss pending; however the anti-Slapp Statutes require this Special Motion. Rote does not intend to dismiss his counterclaims.

## II.    FACTUAL BACKGROUND

Rote operates multiple blogs, publically available to the world. The Blog applicable to the Plaintiff's complaint is at  https://sittingduckportland.wordpress.com/ (the "Blog"). The Blog exists as a forum for drafting a book and other intellectual property as well as disseminating information to the world at large about Rote's experience with and investigation into arbitrator corruption, bias, material errors, arbitration's various evidentiary risks and dangers, and to identify elements that erode the public trust. Some of the issues identified are simply failure of the arbitration process to meet the fundamental expectations by the American public for an unbiased and fair adjudication of legal claims. However in this case the amount of evidence dismissed by the arbitrator points to at a minimum a gross abuse of discretion and more likely absolute bias.

The failures of arbitration as well as elements or badges of fraud are explored at great length and they are an unqualified area of public interest. As Alexander Hamilton first wrote, "the first duty of society is justice." Arbitration fails to meet that standard. But just as important, this arbitration event would have destroyed the average small business in Oregon and by all accounts represents a tragic result.

The "Blog" was born out of Rote's own experience in the arbitration where Zweizig was the

Defendant. The arbitration from complaint to award took over seven years, at a cost of more than $200,000 in legal fees. The complaint was tantamount to an unsubstantiated allegation that the Defendant observed a mid-level manager driving 55.25 mph in a 55 mph zone and upon complaining to the ODJ was fired. No part of the allegation was true, even as ridiculous as it was on the surface. So, Rote dove into the evidence and wrote a blog, a book and a screenplay. It's not a superficial analysis. In order to reach a conclusion of arbitrator misbehavior, Rote has dissected the evidence, provided and submitted to the readers a number of forensic reports, testimony of key witnesses, other objective evidence and as appropriate raises issues of clearly false testimony, errors and bias.

The following conclusions were reached based on that investigation and reported in the Blog:

- The complaint to the ODJ was made by an attorney on behalf of Zweizig based exclusively on a discussion with someone representing to be Zweizig's NJ attorney. The NJ attorney was Sandra Ware, Zweizig's girlfriend.
- There was overwhelming evidence showing that Zweizig was terminated before his complaint to the ODJ. That evidence includes the forensic reports and testimony. That evidence was rejected by the arbitrator.
- Theories as to why the evidence of Zweizig's termination date was dismissed point to absolute confusion on forensic reports or arbitrator bias. Even Zweizig's forensic expert concluded that an email terminating Zweizig was sent to him before his complaint to the ODJ, eliminating the retaliation and wrongful termination claims. The arbitrator rejection of this evidence goes to bias.
- The destruction of an enormous amount evidence by Zweizig was permitted without repercussion. The destruction occurred after a litigation hold was placed on his personal computers. The failure to punish Zweizig pointed to arbitrator bias.
- Each separate testimonial event in which Zweizig lied, why and how it was measurable, identifying when the arbitrator was aware of the lies and why the arbitrator ignored them all supported arbitrator bias.

- The influence opposing counsel had on the arbitrator, given their 14 year work and partner history while at Miller Nash ultimately supported arbitrator bias..

- The ethical violations by Linda Marshall (opposing counsel) when she knowingly advanced evidence that was false, supported arbitrator bias.

- The self-recusal by the arbitrator and related failure to disclose his prior working relationship with Marshall raised and elevated the issue of bias once discovered by Rote. The reversal of the recusal at Marshall's request influenced the arbitrator award.

- The damages sustained by Rote's company NDT, in an amount exceeding $100,000, when software programming was destroyed by Zweizig were not treated as credible by the arbitrator, in spite of five witnesses testifying in support of the damages NDT sustained. This pointed to arbitrator bias.

- Evidence of Zweizig's illegal use of company property to download movies, music and other material in violation of copyright laws simply pointed to one of a series of lies in his testimony, which the arbitrator ignored.

- The risk Zweizig subjected the company to by using public file sharing sites on a business computer hard drive containing sensitive customer credit card information that could have easily lead to identity theft. This was a serious issue that would have resulted in Zweizig's immediate termination and yet that was ignored by the arbitrator.

- The refusal by the arbitrator to reach conclusions that a complaint to a government agency may in fact be baseless and not made in good faith represented either a complete lack of understanding of the case or bias. This should have been an necessary step, but because the source of the evidence was destroyed by Zweizig, NDT should have been permitted the negative inference. This suggested arbitrator bias.

- That supporting evidence was requested by the ODJ and none was supplied by Zweizig. The materiality of that action was ignored by the arbitrator.

- That the excel spreadsheet Zweizig provided in support of his retaliation claim could not be corroborated by anyone from his former employer. It was just his word against the testimony of four others. That was ignored and went to bias.

- That the email Zweizig claimed to have received with a spreadsheet attachment was never

turned over and also not corroborated. Again, the email if it existed was destroyed. That was ignored and went to bias.

- Why the arbitrator did not embrace the necessary negative inferences resulting in the dismissal of Zweizig's claims was a question addressed.

- Evidence of ex-parte contact between Marshall and the arbitrator as well as submitting evidence off the record unrelated to the arbitration intended to unlawfully influence the arbitration by Marshall all went to bias.

- Not all bias arises out of an intent by the arbitrator to harm the other party. Sometimes the bias exists because the arbitrator was close to completely confused about the evidence. That is why the substantial prior working relationship represented an untenable risk that the arbitrator would set the facts aside and find in Marshall's favor. Every morning the arbitrator would ask Marshall "where we left off?" This went to bias.

- And most importantly Rote concludes that sophisticated employees are using the Retaliation Statutes under ORS 659A to attempt to block employer complaints to law enforcement when evidence of employee wrong doing, even criminal behavior, is at risk of being found post-employment.  This case is but another example of that.


In his Complaint, Zweizig provides a few specific examples of blog commentary directed at him but otherwise essentially provides a "Summary and out of context Portrayal of Plaintiff" on which he describes and ascribes his emotional distress should someone discover the blog. Presumably the emotional distress includes the truth of the evidence evaluated. The Summary Portrayal does not cite the actual language of the Blog **in its context**, but instead rests on what Zweizig believes to be the implication of Rote's opinions and the facts revealed in the Blog. It is this "out of context portrayal" that Zweizig claims has caused him damage and while he has asserted **some** of them are defamatory and false, his strongest concerns are with independently produced forensic reports licensed by Rote

For example, the forensic reports are cited by Zweizig as offered with the intent of disclosing information about him that would be devastating to his future employment opportunities because of their truth, whereas Rote has offered them as independent evidence supporting Rote's conclusions at

to the risk in arbitration given the credibility of this evidence.

Zweizig also suggests that forensic reports detailing porn (some of which was gay porn) is somehow portraying him in a false light. But the false light has nothing to do with the porn itself, except for one specific point. The hard drive on which the porn was saved was used by Zweizig and only Zweizig. It was never used by anyone else. The point of the forensic report was to conclude as to its use during a time in which Zweizig claimed it had been reformatted and was in his fireproof safe. Rote did not generate these reports and had no idea what the results would be at the time they were requested. Their results however very clearly go to the credibility of one element of Zweizig's testimony and it is a point the arbitrator understood.

If a farm employee makes a retaliation claim for unsafe working conditions and on his last day burns down a barn, then the testimony of others witnessing him setting the barn on fire is material to the story. In a retaliation case, the employer's damages (if found guilty of retaliation) are mitigated by the damages the employee caused when he burned down the barn. Rote's opinion is that the testimony of five witnesses and the forensic evidence was so strong it goes to arbitrator bias. Zweizig may not like the topic being discussed, but it the price of litigation and the commentary arising from it.

### III.    STATUTORY BASIS FOR MOTION

ORS 31.150 provides, in part, as follows:

(1)    A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice.

(2)    A special motion to strike may be made under this section against any claim in a civil action that arises out of: …

        (c) Any oral statement made, or written statement or other document presented, in a place open to the public or in a public forum in connection with an issue of public interest; or

        (d) Any other conduct in furtherance of the exercise of … the constitutional right of free speech in connection with a public issue or an issue of public interest.

(3)    A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is

made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion.

(4)    In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

This statute was adopted by the legislature in 2001. Or. Laws 2001, ch. 616. California adopted its anti-SLAPP statute in 1992 and Oregon's statute was "closely modeled on the California statute. (Testimony of Dave Heyndericks, Legislative Counsel, to House Committee on Judiciary, Subcommittee on Civil Law, March 19, 2001 E).

California's anti-SLAPP statute was enacted to allow early dismissal of meritless First Amendment cases aimed at chilling expression through costly, time-consuming litigation. *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1109 (9th Cir. 2003). However, "[t]he moving defendant has no obligation to demonstrate that the plaintiff's subjective intent was to chill the exercise of constitutional speech or partition rights, or that the action had the effect of chilling such rights." *Mann v. Quality Old Time Service, Inc.*, 15 Cal.Rptr.3d 215, 220 (Cal. App. 2004). The statute can be invoked against *any kind of claim* that is based on protected speech. "The nature of the cause of action alleged is not dispositive." *Ingels v. Westwood One Broadcasting Services, Inc.*, 28 Cal.Rptr.3d 933, 940 (Cal. App. 2005) (applying statute to age discrimination claim).  See also *Seelig v. Infinity Broadcasting Corp.*, 119 Cal.Rptr.2d 108 (Cal. App. 2002) (applying statute to claims for intentional infliction of emotional distress, slander, and invasion of privacy); *Ludwig v. Superior Court*, 43 Cal.Rptr.2d 350 (Cal. App. 1995) (applying statute to claims for interference with contractual relations, interference with prospective economic advantage, and unfair competition). Defendants in Federal Court may avail themselves of the anti-SLAPP statute provisions.  *Card v. Pipes*, 398 F. Supp 2d, 1126 (Or. Dist 2004).

## IV.    ARGUMENT

Zweizig's claims must be stricken and reasonable attorney fees awarded to Rote. The other Defendants should be awarded reasonable attorney fees as well. Zweizig is suing Rote for his constitutionally protected speech on an issue of public interest. The burden now

shifts to Zweizig to prove a probability of success on his case using substantial evidence.  He cannot do so.

### A.    Zweizig's Claims Against Rote Arise from Rote's Protected Conduct.

Under ORS § 31.150(3), a court must first decide whether a claim "arises out of a statement, document or conduct described in subsection (2) of this section." In this case, Zweizig's complaint is based on statements made "in furtherance of the exercise of the constitutional right of … free speech in connection with a public issue or an issue of public interest" within the meaning of ORS §31.150(2)(d), and, alternatively, in a public forum within the meaning of ORS § 31.150(2)(d).

By contrast Zweizig is claiming he has a right to privacy because the evidence that Rote uses to make his opinions of public interest arose in an arbitration partially about Zweizig's retaliation counterclaims. Rote's company was the Plaintiff and had its own claims.

### 1.    Rote's Statements Were Made in the Exercise of his Constitutional Right of Free Speech.

Zweizig's claims against Rote are partially based  on statements made by Rote on his Blog as to Zweizig. See **Complaint ¶ 26 (b), (d), (g).**  Zweizig further claims that the blog prominently identifies Plaintiff (**Complaint ¶ (a)**), which is not true. Zweizig's name was removed at their request. Zweizig further claims that the blog is directed to other critiques including those against his attorneys, of which his fiancée is one. See **Complaint ¶ 26 (c), (e), (f).** On this point, Zweizig is suing Rote for speech against his attorneys.

 Posting facts and opinion on the internet, including those made on a blog, is conduct in furtherance of the exercise of the constitutional right of free speech. *See In re Anonymous Online Speakers,* 661 F.3d 1168, 1173 (9th Cir. 2011) ("although the Internet is the latest platform for anonymous speech, online speech stands on the same footing as other speech.") *See also Reno v. Am. Civil Liberties Union,* 521 U.S. 844, 845 (1997) (there is " no basis for qualifying the level of First Amendment scrutiny that should be applied to the Internet."). Zweizig's claims are based on Rote' speech, satisfying the first half of his burden under ORS § 31.150(2). Alternatively, Rote' statements were made in a public forum: Rote' blog, accessible free of charge to anyone on the internet. The

internet is a public forum. *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 895 (Cal. App. 2004) (statements made on the internet "hardly could be more public. The Internet "provides relatively unlimited, low-cost capacity for communication of all kinds .... This dynamic, multifaceted category of communication includes not only traditional print and news services, but also audio, video, and still images, as well as interactive, real-time dialogue. Through the use of chat rooms, any person with a phone line can become a town crier with a voice that resonates farther than it could from any soapbox. Through the use of Web pages, mail exploders, and newsgroups, the same individual can become a pamphleteer." Citing *Reno* at 870; *See also Computer Xpress v. Jackson*, 93 Cal.App.4th 993, 1007 (Cal. App. 2001) (holding that disparaging remarks made on Web sites were made in a public forum when the evidence showed that the Web sites were accessible free of charge to any member of the public and persons who chose to do so could post their own opinions there.)

## 2.    Rote's Statements Relate to "An Issue of Public Interest"

Arbitrator and judicial abuse are the things movies and tv shows are made of, as is perjuriously offered testimony of witnesses. The public is and must remain interested in this topic and what Rote attempts to point out is that the abuse opportunity in arbitration is palpable and common. So common in fact that the review standards need to be changed or arbitration needs to be abandoned because of rampant failure. Whether the arbitration failures are a result of corruption or incompetence is important but does not change the discussion of arbitration ineffectiveness.

Public interest, for anti-SLAPP purposes, is anything that the public is interested in. *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (Cal. App. 2008) ("an issue of public interest" within the meaning of [California's anti-SLAPP statute] is any issue in which the public is interested.") Precise boundaries of the "public interest" may be difficult to draw, but in each of the cases discussing the issue, the subject statements concerned conduct that could directly affect a large number of people beyond the direct participants, or a topic of widespread, public interest. *Rivero v. AFSCME,* 105 Cal. App. 4 913, 924 (Cal. App. 2003). Discussion of crimes and violations of the law is in the public interest. *See Tague v. Citizens for Law and Order, Inc*., 75 Cal. App. 3d Supp. 16

(Cal. App. 1977) (explaining that the subject of crimes and criminals plunges deeply into the heart of public issue). Debate may be sparked and encouraged by the discussion of an individual's involvement in an issue of public interest. *Seelig v. Infinity Broadcasting Corp.* 97 Cal. App. 4th 798, 807–08 (Cal. App. 2002); *Gardner v. Martino*, 2005 WL 3465349 (D. Or. September 19, 2005) (explaining comments on talk-radio show about a single consumer's treatment by a mom and pop retailer constituted statements about a public issue); *Card v. Pipes*, 398 F. Supp. 2d at 1137 (D. Or. 2004) (finding that individual's alleged anti-Israel statements were in connection with the public interest); *See also Sipple v. Foundation for National Progress*, 71 Cal. App. 4th 226 (Cal. App .1999) (holding that magazine article publicizing alleged domestic violence by plaintiff was in connection with an issue of public interest because the article addressed domestic violence.)

Rote has two Blogs devoted to exposing measurable compromises to the justice system, bias as to the arbitrator and something more problematic with two presiding judges in Denver. The Blog is not concerned with Zweizig in his personal capacity, but the evidence evaluated and the extent to which the arbitrator had to bend to find in his favor. Zweizig's name was for a short time mentioned, and his role discussed, in less than 10% of the Blog's content. Subsequently Zweizig's name was removed, per his request. It is simply immaterial to the evaluation. At the time the blog drafts were created, the blog itself was not being marketed, but was nonetheless public and was indexed. It is now being actively marketed. Rote is only interested in stopping corrupt arbitration and abuses to justice, and is not interested in Zweizig personally. The attorneys involved and the arbitrator are named and are prominently displayed, tagged and indexed.

Rote's Blog represents speech on an issue of public interest because it discusses a grave public concern, impacting millions of people, and generating tens of thousands of complaints to the federal government. The FBI task force on public corruption clearly conveys that this is one of the most important areas of focus by the FBI. Judicial abuses fall into the public corruption arena. The public is interested in the Blog and its topics; therefore, its content is an issue of public interest.

**B.    Zweizig Must Present Substantial Evidence That He Will Prevail On His Claim**

After showing that the claims against Rote arise out of his constitutionally protected speech on an issue of public interest, the burden shifts now to Zweizig to present "substantial" evidence that he will "probably" prevail on his claim.  ORS § 31.150(3).  Zweizig cannot present the substantial evidence necessary to prevail on any of his claims. He cannot prevail because the speech complained of is absolutely protected by the First Amendment, and, even if not protected, Zweizig cannot prove all of the elements of the claims he has pled.


**1. The First Amendment Absolutely Protects Rote From Liability.**

The First Amendment limits the ability of the courts to impose tort liability for speech between private citizens on an issue of public concern. *See New York Times v. Sullivan* 376 U.S. 254 (1964). Zweizig's three different causes of action are all premised on Rote' opinion based on disclosed facts, and all three can be equally barred by the First Amendment. *Time Inc. v. Hill* 385 U.S. 374 (1967) (false light); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) (IIED and invasion of privacy); *Snyder v. Phelps,* 131 S. Ct. 1207 (2011) (IIED); *NAACP v. Clairborne Hardware,* 458 U.S. 886 (1982) (malicious interference with business).  Where speech on matters of public concern is involved, the First Amendment precludes liability based on statements that fail to contain a provably false factual connotation. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990).

Any factual, non-opinion, Blog statements are equally protected because they are true. All three of Zweizig's claims depend on falsity if as Zweizig claims they are defamatory. Though Zweizig has failed to allege any particular false statement found in the Blog, to the extent that he is successful in showing that certain statements are not protected opinions, he will not be able to demonstrate falsity because they are true; all Blog assertions are either opinions as to the evidence presented in the arbitration or conclusions drawn from reliable source documents and testimony in the arbitration. While Zweizig may not wish for the forensic evidence to be disclosed, it is not

something he can quash through this or any other action.

Zweizig hopes to avoid the free speech argument by alleging the acts by Rote and his controlled but inactive corporations are an adverse employment reference in form that may arise at some future time if he ever applies for a job. Defendant takes the Retaliation claims as being a disingenuous effort to avoid the Defendants right of free speech, a right just as protected as the one he claims for himself.

### a. The Blog is Rote's Opinion

The First Amendment absolutely protects opinion speech. "[A] court must ask as a threshold matter "whether a reasonable fact finder could conclude that the contested statement 'implies an assertion of objective fact.' If the answer is no, the claim is foreclosed by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995). Statements of pure opinion, as well as those based on disclosed facts, are subject to the same First Amendment protections. *Lewis v. Time, Inc,* 710 F.2d 549, 555 (9th Cir. 1984) ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning."). *See also* Restatement (2d) of Torts § 566 cmt. c (1965) ("A simple expression of opinion based on disclosed ... non-defamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.").

Whether speech is an assertion of opinion or fact is determined by an examination of "the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable fact finder could conclude that the statements imply a false assertion of objective fact and therefore fall outside of the protection of the First Amendment." *Partington* at 1153. Only false representations of fact are subject to the types of claims asserted by Zweizig.

Rote used evidence to support all of his opinions, including forensic data & reports, declarations of the forensic investigators, the DOJ's refusal to pursue Zweizig's claims, witness

testimony, invoices supporting damages, correspondence with Zweizig, and Rote's own analysis of computer metadata . The Blog makes clear the evidence on which Rote's opinion is based, and offers readers the actual source documents, which they can then review and make a determination about the truth of Rote' conclusions.

The Blog presents Rote' First Amendment protected opinion. His language is couched as opinion and states throughout the blog that readers should review the information and make their own determination. He continually reminds readers that his conclusions are based on the information provided in the Blog. A review of the whole Blog reveals that it does not present bare assertions of objective fact, but of opinion based on disclosed and detailed evidence from which readers are invited to draw their own conclusions.

When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation. They will be unlikely to construe the statement as insinuating the existence of additional, undisclosed facts, and a statement made without foundation "reveals its lack of merit when the opinion-holder discloses the factual basis for the idea." *Redco Corp. v. CBS, Inc*., 758 F.2d 970, 972 (3d Cir. 1985). Readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts. *Id.*

The Ninth Circuit applied this principle where an attorney claimed he had been defamed by an article calling him a "shady practitioner." *Lewis v. Time, Inc.,* 710 F2d 549. The court held that the First Amendment protected this expression of opinion because the article set forth the facts on which the opinion was based: a judgment entered against the attorney for defrauding his clients, and another judgment holding him liable for malpractice. The article's factual assertions were accurate, and concluded that the plaintiff's claim was barred. *Id* at 554.

("[W]here a publication sets forth the facts underlying its statement of opinion ... and those facts are true, the Constitution protects that opinion from liability for defamation").

Rote' opinions about Zweizig are analogous to those in *Lewis* and the Blog's language is couched in terms of opinion, not fact. "Where the language of the statement is 'cautiously phrased in terms of apparency' … the statement is less likely to be understood as a statement of fact rather than as a statement of opinion." *Information Control Corp. v. Genesis One Computer*

*Corp.*, 611 F.2d 781, 784 (9th Cir. 1980). A fair reading of the Blog can only conclude that it represents the author's opinion. Therefore, the First Amendment absolutely protects Rote from liability.

### b. Any False Implications Are Not Actionable.

Zweizig fails to present any actual statements from the Blog in support of his claim. Rote makes it clear that the Blog is his point of view. (The first paragraph of text describes the Blog as "**an opportunity to expose and explore**").  The expression of a point of view is fully protected by the First Amendment. *See Phantom Touring, Inc. v. Affiliated Publications,* 953 F.2d 724, 729 (1st Cir. 1992) ("[Because] the sum effect of the format, tone and entire content of the articles is to make it unmistakably clear that [the author] was expressing a point of view only, ... the challenged language is immune from liability.").

Instead, Zweizig's complaint alleges that the Blog is intended to cause him, his attorneys and others harm and embarrassment.  *See* **Complaint ¶26 (a)–(f).** He couches these claims as a "summary" of how he is portrayed on the Blog and does not cite to the actual language of the Blog itself. His claim is based not on the language of the Blog itself, but on the implication of the Blog's statements.

However, when the actual language used by Rote in the Blog is examined, Zweizig's complaint falls apart. A fair reading of the blog does not support the implications which Zweizig draws because Rote' opinion is disclosed as being based on arbitration records. The entire purpose of the Blog was to connect the dots between strategically false evidence and biased arbitrators, as well as defend his personal reputation. Rote was identified as the one who took the retaliation action against Zweizig. Rote' statements would not have been credible without reasonable evidence; he would have been just another internet conspiracy theorist.

When a claim is based on implication, falsity necessarily cannot be proven. *Lewis v. Time, Inc* 710 F2d 549. Negative implications are "not the kind of factual expression for which the Constitution permits liability to be imposed." *Id.* at 554. Since no actual language from the Blog is alleged to have been false, and Zweizig's only assertion is that the Blog implies a false

implication, the First Amendment absolutely protects Rote.

## 2. The False Light Claim Fails.

Even if the First Amendment doesn't absolutely protect Rote from Zweizig's suit, Zweizig must still present substantial evidence on each element of his multiple claims. Zweizig claims that the Blog portrays him in a false light and he must now demonstrate by a preponderance of the evidence that he can prove a prima facia case at trial.  He cannot do so. The forensic reports for example are prepared by experts, not by Rote.

While the distinction between false light and defamation is difficult to draw, the Supreme Court has held that false light claims must meet the same constitutional standards as defamation claims. *Time Inc. v. Hill* 385 U.S. at 388. The evidence for both torts rests on the same underlying conduct, but false light provides a remedy for invasion of privacy, and defamation provides a remedy for damage to reputation. *Magenis v. Fisher Broad., Inc.*, 103 Or. App. 555, 558, (1990).  The analysis, and case law, discussing both claims is interchangeable.

Oregon has adopted the false light theory of invasion of privacy found in the Restatement (Second) Torts. *Dean v. Guard Pub. Co., Inc.*, 73 Or. App. 656, 659–60 (1985).  The Restatement says that a plaintiff must prove: (a) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (b) the defendant has knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Restatement 2d § 652E:3. False light requires falsity, a highly offensive association, and actual knowledge or reckless disregard of the truth. *Id.* Zweizig cannot prove falsity and actual knowledge or reckless disregard for the truth.

Rote explicitly and openly cited source documents for his opinions. As discussed above, those documents were produced by forensic investigators, government agencies, arbitration records and testimony from employees, clients and vendors. "Recklessness" in Oregon is action without knowledge of truth or falsity; it is an action taken without a basis one way or the other. *See Holland v. Lentz,* 239 Or. 332, 340 (1964).  An opinion based on significant and uncontroverted

evidence from the arbitration records is not reckless.

### 3. Intentional Infliction of Emotional Distress Also Fails

Zweizig's claim stems from the same conduct as his other claims: Rote's Blog postings reveal both party's evidence. The Oregon anti-SLAPP statute applies equally to this claim as well as the False Light claim. This court has previously dismissed claims for **IIED** pursuant to ORS § 31.150. *See Card v. Pipes,* 398 F. Supp. 2d at 1136–37. *See also DuBoff v. Playboy Enterprises Int'l, Inc.*, CIV. 06 358 HA, 2007 WL 1876513 (D. Or. June 26, 2007).

A claim for IIED requires proof that (1) defendants' acts were so extreme and outrageous that they constituted an extraordinary transgression of the bounds of socially tolerable conduct; (2) defendants intended to inflict severe emotional distress on plaintiff; and (3) defendants' acts caused plaintiff severe emotional distress. *Babick v. Or Arena Corp.*, 333 Or 401, 411 (2002).

Zweizig will not be able to present evidence to support a prima facie case for IIED. Rote did not intend or desire to inflict *any* emotional distress on Zweizig. Rote reaffirms here as he has in his blog that the failure of the arbitration rests clearly on a system that Zweizig counsel intended to exploit through her 14 year prior working relationship with the arbitrator. Oregon courts have limited the term "intent" to include only those situations where the defendant desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. *McGanty v. Staudenraus*, 321 Or 532, 550 (1995) (quoting Restatement (2d) of Torts, § 46, cmt I (1965)).

Additionally, Zweizig cannot demonstrate a sufficient causal nexus between the Blog postings and his emotional distress. The Complaint alleges emotional distress caused by unidentified third parties who he admits may or may not ever find there was to the blog. And Zweizig's name has been removed, not because this was necessary, but rather because Zweizig requested it. But IIED requires that the *defendant's* actions cause the plaintiff severe emotional distress.

Zweizig's complaint does not assert that Rote' actions per se caused his emotional distress; but rather he claims that the thought that someone will discover what he was up to has caused the stress and that Rote's blog is the source of that information.

Even if Zweizig did successfully claim that Rote' Blog posts were the actual cause of his

severe emotional distress, his posts were well within the bounds of socially acceptable conduct. "A trial court plays a gatekeeper role in evaluating the viability of a claim for … IIED by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability." *House v. Hicks*, 218 Or. App. 348 (2008).

Rote's Blog posts do not go beyond the "farthest reaches of socially tolerable behavior". He posted his source documents. He cited to opinions, reports, testimony and affidavits. His posts were reasonable, responsible and well within the bounds of socially tolerable conduct, and cannot form the basis of an IIED claim.

### 4. Interference with Prospective Unidentified Employment Is Not Actionable.

Zweizig further claims that Rote intentionally interfered with his prospective employment by exercising Rote's First Amendment right of free speech. This tort is reformed to a whistle blower retaliation claim and requires that Zweizig prove (1) the existence of a prospective employment opportunity now; (2) intentional interference with the relationship; (3) by an employer; (4) accomplished through improper means or for an improper purpose in retaliation for protected activity; (5) a causal connection between the protected activity and damage to the employment relationship; and (6) damages. *McGanty v. Staudenraus*, 321 Or at 535. Zweizig cannot prove the existence of a prospective employment opportunity today (as he has already admitted, his allegation is for some time in the future), intentional interference with the relationship**,** accomplished through improper means or for an improper purpose or a causal effect between the protected activity and damage to the economic relationship**.**

Zweizig cannot prove the existence of a prospective employment opportunity and cannot attribute any adverse action to it. Zweizig claims that he has prospective rights in *potential and hypothetical* future employment and that those opportunities **may be** destroyed because the blog asserts that he performed his job duties poorly (presumably when programming was not turned over). Complaint ¶ 26. To prevail requires Zweizig to prove "a voluntary relationship with another party that would have very likely resulted in an employment benefit for the plaintiff but for the

defendant's interference." *Cronv. Zimmer*, 255 Or. App. 114 (2013). Zweizig cannot present evidence of any voluntary relationship that would have "very likely" resulted in employment. His complaint does not even allege there is a present opportunity for employment. The complaint does not make more than a speculative association to any voluntary relationships, which cannot support Zweizig's allegations.

Further, Zweizig cannot prove improper purpose or improper means. "If liability is based on an improper purpose, the purpose must be to inflict injury on the plaintiff as such". *Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 328 Or 487, 498 (1999) (internal quotation omitted). If liability is based on improper means, the means must violate some objective, identifiable standard, such as a statute or other regulation, or a recognized rule of common law, or perhaps, an established standard of a trade or profession. *Id.* Improper means must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of. *Thompson v. Tel. Data Sys., Inc.*, 130 Or App 302, 313 (1994). The motion to dismiss goes into that quadrant of law extensively and are incorporated herein.

Rote posted the Blog to the risks of arbitration and did so pursuant to his constitutional rights to free speech. Speaking out on abuses of arbitration is an issue affecting millions, is not an improper purpose, and doing so on the internet is not improper means.

Finally, Zweizig must show that there is a causal connection between Rote' protected speech and Zweizig's damages, and that he has actually suffered damages. Zweizig's prospective relations are speculative at best, and his ability to reasonably establish damages is equally speculative. He cannot present evidence on this element, and his claim should be dismissed.

### C.    The Claims Against the Corporate Defendants Should be Dismissed.

In addition to the claims against Rote personally, Zweizig asserts that several corporate & "Doe" defendants are liable for all claims because they are affiliated with Rote. That is an insufficient claim and if that liability arises through aiding and abetting the claims must be dismissed when the claims against Rote are dismissed.

# V.    CONCLUSION

Zweizig's claims of false light, intentional infliction of emotional distress and interference with prospective employment relations are exactly the kind of claims that the anti- SLAPP statute was intended to discourage: they are "meritless claims aimed at chilling expression through costly, time consuming litigation." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d at 1109 . Rote statements are true, and not actionable, or opinion, and not actionable.  Zweizig cannot "establish that there is a probability that he will prevail on the claims by presenting substantial evidence to support a prima facie case." ORS 31.150(3).

His claims should be stricken and Rote & other Defendants awarded reasonable attorney's fees and costs under ORS 31.152(3).

DATED: March 21, 2016.

/s/ Timothy C. Rote
   Timothy C. Rote

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing **MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)** on:

    **Joel** Christiansen
    Email: joel@oremploymentlawyer.com

[  ] Via First Class Mail

[   ] Via Email

[  ] Via Hand Delivery

[X] Via ECF Notification

       DATED: March 21, 2016.


                 /s/ Timothy C. Rote_____
                 **Timothy C. Rote**
                 timothy.rote@gmail.com
                 ProSe