Joel Christiansen, OSB #080561
VOGELE & CHRISTIANSEN
812 NW 17th Avenue
Portland, OR 97209
T: (503) 841-6722
E: joel@oremploymentlawyer.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MAX ZWEIZIG**, | Case No. 3:15-cv-02401-HZ |
| Plaintiff, | **PLAINTIFF'S SPECIAL MOTION TO STRIKE** |
| v. | |
| **TIMOTHY C. ROTE**, a citizen of the state of Oregon, **NORTHWEST DIRECT TELESERVICES, INC.**, an Oregon for-profit corporation, **NORTHWEST DIRECT MARKETING OF OREGON, INC.**, an Oregon for-profit corporation, **NORTHWEST DIRECT MARKETING, INC.**, an Oregon for-profit corporation, **NORTHWEST DIRECT OF IOWA, INC.**, an Iowa for-profit corporation, **ROTE ENTERPRISES, LLC**, an Oregon limited liability company, **NORTHWEST DIRECT MARKETING, INC.**, aka Northwest Direct Marketing (Delaware), Inc., a Delaware Corporation, and **DOES 1 through 5**, | |
| Defendants. | |

**LR 7 CERTIFICATION**

Plaintiff's counsel hereby certifies that he attempted to confer with Defendant Timothy C. Rote ("Rote") concerning the subject of this motion. As of the filing of this motion, the

parties have been unable to resolve the dispute. Christiansen Dec. ¶ 2.

## SPECIAL MOTION TO STRIKE

Plaintiff Max Zweizig ("Plaintiff") moves this Court for an order pursuant to ORS 31.150 *et seq.* (Oregon's anti-Strategic Lawsuits Against Public Participation or "anti-SLAPP" statute) striking Rote's first, sixth, and seventh counterclaims as pled in Rote's Second Amended Answer, ECF 29.[1] Plaintiff's motion is based on the following legal memorandum, the Declaration of Joel Christiansen filed concurrently, and the court's file. Plaintiff also seeks his costs and attorney fees in accordance with ORS 31.152(3). Plaintiff will submit an attorney fee statement pursuant to ORCP 68 if this Court grants this motion.

## LEGAL MEMORANDUM

### I.    Introduction

This Special Motion to Strike under Oregon's anti-SLAPP statute concerns Rote's claims arising from a report that Plaintiff's attorneys, Linda Marshall and Joel Christiansen, made to the Honorable Senior District Judge Robert E. Jones' courtroom deputy on November 12, 2015.

### II.    Facts

#### A.    Litigation Background

The parties' litigation history in this matter is accurately set forth in the background section of this court's Opinion & Order, ECF 29, denying Rote's motion to join, which is copied below. (*Zweizig v. NW. Direct Teleservices, Inc.*, 3:15-CV-02401-HZ, 2016 WL 755626, at *1 (D. Or., Feb. 25, 2016))

Plaintiff alleges that he was terminated by Defendant Northwest Direct Teleservices, Inc. (NDT), a corporate entity owned by Timothy Rote, after Zweizig reported to the Oregon Department of Justice and the Lane County District Attorney that NDT had engaged in criminal activity. Compl. ¶¶ 17-18, ECF 1. Zweizig also alleges that Rote and NDT took other adverse actions against Zweizig, including publishing statements to third parties and the

---

[1] Although Rote has not obtained leave to file any amended pleadings, this motion treats the Second Amended Complaint as the operative pleading hopefully to expedite this matter.

general public accusing Zweizig of destroying data and engaging in other criminal and civil misconduct during his employment at NDT. Id. at ¶ 18.

The parties engaged in arbitration related to this employment dispute for several years and, ultimately, an arbitrator found in Zweizig's favor and awarded damages to Zweizig. *Id*. at ¶ 21. The arbitration award was reduced to a judgment; however, NDT has failed to satisfy that judgment. *Id*. at ¶ 22. On March 11, 2014, Zweizig filed a lawsuit against NDT, Rote, and related corporate entities, alleging that the defendants violated the Uniform Fraudulent Transfer Act and engaged in other fraudulent activity to defeat Zweizig's ability to enforce his whistleblower retaliation judgment. *Id*. at ¶ 23.

On or about February 27, 2015, Defendants created a website, "Sitting Duck Portland," which describes the arbitration between Rote's companies and Zweizig. *Id*. at ¶ 25. According to Zweizig, the Sitting Duck Portland website disparages Zweizig, his fiancée, and his counsel. *Id*. at ¶ 27.

On December 24, 2015, Zweizig filed the present employment discrimination action against Rote, a citizen of Oregon; six corporate entities allegedly owned by Rote, including NDT; and five Doe defendants. Zweizig alleges that the content of the Sitting Duck Portland website constitutes a series of ongoing adverse employment actions targeted at Zweizig due to his participation in protected conduct. *Id.* at ¶ 28. Zweizig brings claims of whistleblower discrimination and retaliation, retaliation for opposing unlawful conduct, and aiding and abetting. *Id*. at ¶¶ 31-57.

On January 28, 2016, Rote filed an answer to Zweizig's complaint, in which Rote asserts five counterclaims, including a counterclaim of defamation. (footnote omitted) Rote Am. Answer ¶¶ 30-34, ECF 19. Rote's defamation claim alleges that Zweizig, Zweizig's counsel, or other related parties, contacted Judge Robert E. Jones and stated that Rote posed a threat to Judge Jones at his Lifetime Achievement Award ceremony, which prompted an investigation by the U.S. Marshals. *Id*. at ¶ 30.

/ / / /

Page 3 of 13 - PLAINTIFF'S SPECIAL MOTION TO STRIKE

**B.      Rote's Comments Concerning Judge Jones on Rote's Sitting Duck Portland Website**

Excerpts from Rote's Sitting Duck Portland website are attached to the Declaration of Joel Christiansen. Rote describes the website as his "effort to expose issues that have arisen when Judges and Arbitrators give into activism, cronyism, and favoritism." Christiansen Dec. ¶ 3, Ex. 1. Rote tells a "story which reflects our opinion of bias, of cronyism, perhaps of bribery, of corruption, of fraud. And it spans over 7 years and involves Judges coast to coast." Christiansen Dec. ¶ 4, Ex. 2. One of the judges identified in the blog is Senior District Judge Robert E. Jones. Christiansen Dec. ¶ 5, Ex. 3. The posts about Judge Jones concern, in part, a former lawsuit involving Rote captioned *Jones v. North West Telemarketing, Inc.*, U.S. District Court of Oregon, CV 99-990. *Id.*

The context of Rote's statements concerning Judge Jones is important. At a hearing in the *Jones* case at which Rote appeared, Judge Jones recused himself after receiving a letter from Rote. Christiansen Dec. ¶ 6, Ex. 4. Judge Jones stated, "I don't want anything to do with this case. I have utter contempt for this person. He wrote the court a very personal, very nasty letter. A hypocrite. So, get out of here. I am not going to have anything to do with this. I will recuse myself." *Id* at pp. 3-4. Similarly, in the first iteration of Plaintiff's lawsuit, which began in New Jersey, Rote wrote District Court Judge Robert B. Kugler a letter that resulted in an order to show cause as to why Rote should not be held in contempt. Christiansen Dec. ¶ 7, Ex. 5. The letter implied "that a law clerk employed in this Court had improper contact with plaintiff through plaintiff's girlfriend, and it further appearing that Mr. Rote implies that a law clerk employed in this Court had improper contact with plaintiff through a pedophile website * * *." *Id.* Plaintiff also had received, in 2008, an email from Rote's brother, which stated that Rote had asked his brother to "fly to New Jersey and send [Plaintiff] a message. He wanted me to commit a criminal act." Christiansen Dec. ¶ 8, Ex. 6.

On November 12, 2015, Rote published a new post on the Sitting Duck Portland website. In his post, Rote continued his indictment of the civil litigation process and claimed that one of Plaintiff's lawyers, Linda Marshall, implied at the arbitration that Judge Jones did

not like Rote, in order to influence the arbitrator. *Id* at Ex. 3. Rote then wrote: "The Honorable Robert E. Jones is receiving a lifetime achievement award tomorrow night. The press will be there. Congratulations Judge Jones. Perhaps more often than not our legacies are not what we wanted them to be." *Id.* Marshall and Christiansen subsequently contacted Judge Jones' courtroom deputy to inform the court of Rote's statement. *Id* at ¶5. According to Rote, the U.S. Marshal service subsequently contacted Rote and Rote's attorney. Rote 2d Am. Answer ¶ 31, ECF 29.

   C.     **Rote's Counterclaims Against Plaintiff**

   Rote filed three counterclaims against Plaintiff that are relevant to this motion: (1) Defamation (Rote's first counterclaim, the "Defamation counterclaim"); (2) Intentional Infliction of Emotional Distress (Rote's sixth counterclaim, the "IIED counterclaim"); and (3) Aiding and Abetting (Rote's seventh counterclaim, the "Aiding and Abetting counterclaim").

   Rote's first counterclaim is for defamation. According to Rote, "[Rote] believes that PLAINTIFF, PALINTIFF'S (sic) COUNSEL & OR OTHER related parties contacted The Honorable Robert E. Jones Chamber alleging [Rote] intended to harm or may pose a threat to Judge Jones the evening of or at his Life Time Achievement Award ceremony, prompting the U.S. Marshall (sic) service to contact [Rote's] counsel and [Rote]. The information provided the U.S. Marshal Service was that Judge Jones was contacted and directed to a blog post written by [Rote], which Plaintiff represented as a threat to Judge Jones. The intent of the contact with Judge Jones was to influence the litigation already before Judge Stewart, presumably to include the decision on the summary judgment motion still under advisement and to permanently harm Rote." *Id* at ¶ 31. In his sixth counterclaim for Intentional Infliction of Emotional Distress, Rote alleges that the "accusations" resulted in suffering, mental anguish, emotional distress and embarrassment. *Id* at ¶ 36. Finally, in his seventh counterclaim for Aiding & Abetting, Rote alleges that Plaintiff aided and abetted tortious conduct of other parties that Rote claims were involved in "accusing Rote of planning an assault on Judge Jones." *Id* at 37.

III.    **Argument**

    A.    **Oregon's Anti-SLAPP Statute**

A "defendant in federal court may file a motion to strike under an applicable anti–SLAPP statute." *Accuardi v. Fredericks*, 3:13-CV-01825-ST, 2014 WL 848263, at *1 (D. Or Mar. 4, 2014), citing *Vineyard v. Soto,* 10–CV–1481–SI, 2011 WL 5358659, at *2 (D Or Nov. 7, 2011); *See also, Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013)("California's anti-SLAPP statute, by creating a separate and additional theory upon which certain kinds of suits may be disposed of before trial, supplements rather than conflicts with the Federal Rules.") In ruling on an anti-SLAPP Special Motion to Strike, a court "shall consider pleadings and supporting and opposing affidavits state the facts upon which the liability or defense is based." ORS 31.150(4).

The purpose of Oregon's anti-SLAPP statute, ORS 31.150 *et seq.*, is to expeditiously terminate unfounded claims that threaten constitutional free speech rights. *Staten v. Steel*, 222 Or. App. 17 (2008). It permits a "defendant who is sued over certain action taken in the public arena to have a questionable case dismissed at an early stage." *Mullen v. Meredith Corp.*, 271 Or. App. 698, 700 (2015); *see also Handy v. Lane County*, 274 Or. App. 644, 650 (2015) (anti-SLAPP statute provides an "inexpensive and quick process by which claims that might infringe on the right to petition and free speech on public issues could be evaluated to determine if they were frivolous"), *rev allowed*, 358 Or. 550 (2016).

There are two steps to an anti-SLAPP motion. ORS 31.150(3). A party who brings an anti-SLAPP motion must first establish that the claims arise out of protected rights of expression, *i.e.*, statements, documents or conduct described in ORS 31.150(2)(a)-(d). The burden then shifts to the non-moving party to show "there is a probability that [the non-moving party] will prevail on the claim by presenting substantial evidence to support a prima facie case." ORS 31.150(3).

/ / / /

In relevant part, the protected rights of expression described in ORS 31.150(2) are as follows:

A special motion to strike may be made under this section against any claim in a civil action that arises out of:

* * * *

(b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

**B.      Rote's Counterclaims Arise Out of Statements Made In Connection with An Issue Under Consideration by a Judicial Body [ORS 31.150(2)(b)]**

There is no question that Rote's counterclaims arise out of statements made in connection with an issue under consideration or review by a judicial body. ORS 31.150(2)(b). Rote's Defamation counterclaim specifically alleges that "the intent of [Plaintiff's] contact with Judge Jones was to influence the litigation already before Judge Stewart, presumably to include the decision on the summary judgment motion still under advisement and to permanently harm Rote." Rote 2d Am. Answer ¶ 31, ECF 29. The "litigation already before Judge Stewart" to which Rote refers is the ongoing litigated matter involving these same parties - *Zweizig v. Rote et al.*, U.S. District Court of Oregon, 14-cv-00406. The same is true of Rote's IIED and Aiding and Abetting counterclaims - both of which reference the same "accusations" described in the Defamation counterclaim. Thus, on their face, Rote's Defamation, IIED, and Aiding and Abetting counterclaims all implicate ORS 31.150(2)(b) because, according to Rote, they are made in connection with an issue under consideration by

a judicial body.

**C.    Rote's Claims Arise Out of a Statement Made in a Place Open to the Public in Connection with an Issue of Public Interest [ORS 31.150(2)(c)]**

Rote's claims also implicate ORS 31.150(2)(c), which protects statements made in a place open to the public in connection with an issue of public interest. Any claim that arises out of a "statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest" implicates the anti-SLAPP statute, thereby requiring a non-moving party to provide substantial evidence supporting its claims. ORS 31.150(2)(c).

There is no question that Rote's statements concerning Judge Jones were made in a place open to the public. The Sitting Duck Portland website was at all relevant times accessible to the general public. More specific to this motion, however, is the alleged contact to Judge Jones' chamber in which Rote alleges that "PLAINTIFF, PALINTIFF COUNSEL (sic) & OR OTHER related parties" communicated that "[Rote] intended to harm or may pose a threat to Judge Jones the evening of or at his Life Time Achievement Award ceremony, prompting the U.S. Marshall service to contact [Rote's] counsel and [Rote]."

While Plaintiff disputes the accuracy of Rote's particular allegation, this does not change the fact that federal courts are undoubtedly "a place open to the public." Plaintiff acknowledges that the federal courts are not necessarily a public forum. *Greenspan v. Admin. Office of the United States Courts*, 14CV2396 JTM, 2014 WL 6847460, at *5 (N.D. Cal. Dec. 4, 2014), app. dismissed Jan. 13, 2015 ("Federal courts are not public forums. The Federal Rules of Evidence severely limit speech to "relevant" evidence. Further, legal issues, with certain limited exceptions not applicable in the present case, are constrained by legal precedent, whether arising under constitutional, statutory, or common law.) However, federal courts <u>are</u> open to the public. *See e.g.,* Statement of Chief Judge Edward R. Becker, U.S. Court of Appeals for the Third Circuit, *Perry v. City & Cty. of San Francisco*, 10-16696, 2011 WL 2419868, at *73 (9th Cir. Apr. 27, 2011)("I must emphasize at the threshold that today, as in the past, the federal courts are at all times open to the public.")

Page 8 of 13 - PLAINTIFF'S SPECIAL MOTION TO STRIKE

Regarding the "issue of public interest" prong of ORS 31.150(2)(c), the U.S. District Court of Oregon has noted that "the term has been applied broadly * * * in Oregon state and federal cases." *DuBoff v. Playboy Enterprises Int'l, Inc.*, 2007 WL 1876513, *7 (D. Or. June 26, 2007). For example, Oregon trial courts and federal courts applying Oregon's anti-SLAPP statute have found that the following matters were of "public interest": (A) allegations of political activism and bias in a college classroom; (B) statements regarding a single consumer's dealings with an Oregon retailer; (C) statements regarding a plaintiff's resignation from InFocus Corporation; (D) statements made by an employer to employees and shareholders regarding a plaintiff's termination; (E) comments made by forensic scientists in connection with an ethics complaints against another scientist. By comparison, the issue involved in the present case -- suspicious statements made regarding the attendance of a Senior District Court Judge at a public event -- certainly meets this standard. Therefore, because the statements at issue were made in a place open to the public in connection with an issue of public interest, Rote's Defamation, IIED, and Aiding and Abetting counterclaims implicate ORS 31.150(2)(c).

**D.    Rote's Claims Arise Out of Conduct in Furtherance of the Exercise of the Constitutional Right of Free Speech in Connection with an Issue of Public Interest. [ORS 31.150(2)(d)]**

ORS 31.150(2)(d) protects "conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." Courts have interpreted the latter provision to mean exactly what it says -- "any claim" that arises out of "conduct in furtherance of" free speech rights "in connection with a public issue or an issue of public interest," is protected by the statute. *Mullen v. Meredith Corp.*, 271 Or. App. 698, 705 (2015). The inquiry "aims merely to assess more generally what sort of claim this is * * * [I]s it one that arises out of conduct in furtherance of free speech in connection with an issue of public interest?" *Id.* If so, then the statements are protected.

Courts have applied ORS 31.150(2)(d) to lawsuits alleging that a person purportedly defamed another by reporting suspicious activity to government officials. *Young v. Davis*, 259

Or. App. 497, 502 (2013) (noting trial court had held that anti-SLAPP law applied to allegedly false accusation to sheriff, but deciding issue on other grounds); *Comstock v. Aber*, 212 Cal. App. 4th 931, 941 (2012) (interpreting California's anti-SLAPP statute to apply to "communications to the police").

Moreover, the First Amendment protects statements made – even allegedly defamatory statements – on a "subject of mutual concern to defendants and the persons to whom the statement was made." *See Wattenburg v. United Med. Labs., Inc.*, 269 Or. 377, 380 (1974) (noting there is a qualified privilege for statements made "on a subject of mutual concern to defendants and the persons to whom the statement was made"). The First Amendment also protects opinions about matters of public interest. *New York Times Co. v. Sullivan*, 376 US 254, 270, 84 SCt 710 (1964) (noting the First Amendment provides "special protection" for "speech on topics of public interest"). Oregon law also affords absolute privilege to statements made in a quasi-judicial context. *See e.g., Martinez-Delacruz v. Stuart Olson Farms, Inc.*, 612 F. Supp. 2d 1151, 1155 (D. Or. 2007) (statements to the Oregon Employment Department); *Moore v. W. Lawn Mem'l Park, Inc.*, 266 Or 244, 250-251 (1996) (statements to state board for funeral directors); *Ducosin v. Mott*, 292 Or. 764 (1982) (statements in a telephone call to the county medical examiner). Statements that implicate these privileges, by definition, are "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech" and therefore implicate ORS 31.150(2)(d).

In making his statements about Judge Jones, Rote "thrust [himself] to the forefront of a particular controvers[y]" and, by his own actions, created a matter of public concern. *Wheeler v. Green*, 286 Or. 99, 113 (1979), citing to *Gertz v. Robert Welch, Inc.*, 418 U.S. 345, 351 (1974) ("More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy."); *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997) (the internet allows anyone to be "a town crier with a voice that resonates farther than it could from any soapbox").

The First Amendment also protects statements made on a "subject of mutual concern to defendants and the persons to whom the statement was made." Given the history between

Judge Jones and Rote, the First Amendment unquestionably covers statements purportedly made to Judge Jones's chambers about a publication that accuses Judge Jones of fraud and corruption, and identifies his location, with the press present, at a particular time and place. *See Wattenburg v. United Med. Labs., Inc.*, 269 Or. 377, 380 (1974) (noting there is a qualified privilege for statements made "on a subject of mutual concern to defendants and the persons to whom the statement was made").

Finally, even if Plaintiff forwarded Rote's statements to Judge Jones because he believed the comments were suspicious, as Rote has alleged, doing so necessarily was in furtherance of Plaintiff's First Amendment rights. *Comstock v. Aber*, 212 Cal. App. 4th 931, 941 (2012) (interpreting anti-SLAPP statute on which Oregon law is based to mean that "communications to the police are within SLAPP"). Judge Jones is a public figure who was appearing at a public event with the press in attendance. Given the history between Judge Jones and Rote, it is prudent and privileged to inform Judge Jones of Rote's own statements, including identifying his appearance in front of the press at the event later that day.

Thus, bringing Rote's own statements to the attention of their subject – Judge Jones – is "conduct in furtherance of the * * * constitutional right of free speech in connection with a public issue or an issue of public interest" and is therefore protected under ORS 31.150(2)(d).

### E.      Rote Cannot Satisfy the Second Prong of Oregon's Anti-SLAPP Statute

Because the conduct and statements that give rise to Rote's claims are protected by ORS 31.150(2)(b), (c) and (d), the burden shifts to Rote to "establish that there is a probability that [he] will prevail on the claim by presenting substantial evidence to support a prima facie case." ORS 31.150(3). Plaintiff must show that: (1) his claims are legally cognizable and (2) produce substantial evidence on each element of each of his claims.

Rote's evidence also must overcome Plaintiff's free speech protections under the First Amendment and Article I, sec 8 of the Oregon Constitution, and the numerous privileges implicated by his claims, all of which arise out the representation of clients in civil litigation against him. If Rote cannot meet his burden -- and he cannot -- his claims must be dismissed.

**F.    Plaintiff Will Be Entitled to Recover Attorney Fees If He Prevails on This Motion**

If this court grants this motion, Plaintiff will be entitled to a nondiscretionary award of costs and reasonable attorney fees under ORS 31.152(3). Plaintiff will submit an attorney fee motion pursuant to Fed. R. Civ. Proc. 54 if this Court grants this motion.

**IV.    Conclusion**

Based on the foregoing, Plaintiff respectfully requests that this Court strike Rote's first, sixth, and seventh counterclaims and award Plaintiff's reasonable costs and attorney fees incurred herein.

Dated: May 9, 2016                                VOGELE & CHRISTIANSEN

                                                  */s/ Joel Christiansen*
                                                  Joel Christiansen, OSB #080561
                                                  Of Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing PLAINTIFF'S SPECIAL MOTION TO STRIKE on:

> Timothy Rote
> 24790 SW Big Fir Rd.
> West Linn, OR 97068
> *Pro Se Defendant*
>
> Andrew C. Brandsness
> BRANDSNESS, BRANDSNESS & RUDD, P.C.
> 411 Pine Street
> Klamath Falls, OR 97601
> *Of Attorneys for Defendants Northwest Direct Teleservices, Inc.; Northwest Direct Marketing of Oregon, Inc.; Northwest Direct Marketing, Inc.; Northwest Direct of Iowa, Inc.; Rote Enterprises, LLC; Northwest Direct Marketing, Inc. aka Northwest Direct Marketing (Delaware), Inc.*

through the Court's electronic filing system on May 9, 2016.

*/s/ Joel Christiansen*
Joel Christiansen, OSB #080561
Of Attorneys for Plaintiff
