IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAX ZWEIZIG,

        Plaintiff/
        Counter Defendant,

    v.

NORTHWEST DIRECT TELESERVICES, INC.;
NORTHWEST DIRECT MARKETING OF
OREGON, INC.; TIMOTHY ROTE;
NORTHWEST DIRECT MARKETING
(DELAWARE), INC.; NORTHWEST DIRECT
OF IOWA, INC.; ROTE ENTERPRISES, LLC;
NORTHWEST DIRECT MARKETING, INC.;
and DOES 1-5.
        Defendants/Counter Claimant.

No. 3:15-cv-02401-HZ

OPINION & ORDER

Joel W. Christiansen
812 NW 17th Avenue
Portland, OR 97209

    Attorney for Plaintiff/Counter Defendant

1 - OPINION & ORDER

Andrew C. Brandsness
Brandsness Brandsness & Rudd, P.C.
411 Pine Street
Klamath Falls, OR 97601

>   Attorney for Defendants Northwest Direct
>   Teleservices, Inc.; Northwest Direct Marketing of
>   Oregon, Inc.; Northwest Direct Marketing (Delaware)
>   Inc.; Northwest Direct of Iowa, Inc.; Rote Enterprises,
>   LLC; Northwest Direct Marketing, Inc.; and Does 1-5.

Timothy Rote
24790 SW Big Fir Road
West Linn, OR 97068

>   Pro Se Defendant/Counter Claimant

HERNÁNDEZ, District Judge:

Pro se Defendant/Counter Claimant Timothy Rote brings seven counterclaims against Plaintiff/Counter Defendant Max Zweizig. Plaintiff moves to strike the first, sixth, and seventh counterclaims pursuant to Oregon's anti-SLAPP statute. The Court grants Plaintiff's motion to strike.

## BACKGROUND

The parties' litigation history in this matter was set forth by this Court in a prior Opinion & Order and, therefore, the Court does not repeat it here. See Opinion & Order, February 25, 2016, ECF 25. Presently before the Court are three of Defendant's counterclaims: (1) defamation, (2) intentional infliction of emotional distress, and (3) aiding and abetting. Id.

Defendant alleges that in November of 2015, Plaintiff, Plaintiff's counsel, "or other related parties," contacted the chambers of District of Oregon Judge Robert E. Jones and stated that Defendant posed a threat to Judge Jones at his Lifetime Achievement Award ceremony, thereby prompting an investigation of Rote by the U.S. Marshals. Sec. Am. Answer ¶ 31.

Defendant and Judge Jones have a long history. Judge Jones presided over a portion of a case filed against Defendant in 1999. See Jones v. Nw. Telemarketing Inc., No. CIV. 99-990-JO, 2000 WL 568352, at *1 (D. Or. Apr. 7, 2000) (no relation between the plaintiff Jones and Judge Jones). At some point during the proceedings in Jones, Defendant sent Judge Jones a letter, prompting Judge Jones to recuse himself from the case.[1] Christianson Decl. Ex. 4, ECF 41-1.

On November 12, 2015, Defendant published a blog post titled "Are Arbitrator[s] Above the Law?" in which he discussed the arbitration between himself and Plaintiff. Christiansen Decl. Ex. 3, ECF 41-3. Defendant wrote that, during the arbitration, Plaintiff's attorney submitted a "case summary" to the arbitrator of the case in which Judge Jones had recused himself. Id. According to Defendant, Plaintiff's attorney attempted to influence the arbitrator by suggesting that Judge Jones did not like Defendant. Defendant ended his blog post by stating:

> The Honorable Robert E. Jones is receiving a lifetime achievement award tomorrow night. The press will be there. Congratulations Judge Jones. Perhaps more often than not our legacies are not what we wanted them to be."

Id.

Defendant believes that Plaintiff or his attorneys called Judge Jones' courtroom deputy and told her about the blog post. According to Defendant:

> The information provided [by the U.S. Marshal Service to Defendant] was that Judge Jones was contacted and directed to a blog post written by [Defendant], which [Plaintiff] represented as a threat to Judge Jones. The intent of the contact with Judge Jones was to influence litigation already pending before Judge Stewart, presumably to influence the decision on the summary judgment motion still under advisement and to permanently harm [Defendant]. As a result of the contact and statement, Defendant seeks consequential damages of $1 million and punitive damages of $5 million against [Plaintiff] and Conspirators[2].

---

[1] In a 2001 hearing, Judge Jones stated: "I don't want to have anything to do with this case. I have utter contempt for this person. He wrote the Court a very personal, very nasty letter. A hypocrite. So, get out of here. I am not going to have anything to do with this. I will recuse myself." Christianson Decl. Ex. 4, ECF 41-4.

[2] The Court assumes that "Conspirators" refers to the additional people that Defendant sought to join as counterclaim defendants in this action. See Mot. Join, ECF 20. Because this Court already denied

3 - OPINION & ORDER

Sec. Am. Answer ¶ 31. Joel Christiansen, Plaintiff's attorney, declares that he and Linda Marshall, Plaintiff's counsel in another matter, contacted Judge Jones' courtroom deputy. Christiansen Decl. ¶ 5, ECF 41. However, taking the facts alleged by Defendant as true, the Court proceeds with its analysis as if Plaintiff had made the statements at issue.

## STANDARDS

"A SLAPP suit is one in which the plaintiff's alleged injury results from petitioning or free speech activities by a defendant that are protected by the federal or state constitutions." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003). In response, a defendant in federal court may file a motion to strike under an applicable anti–SLAPP statute. Vineyard v. Soto, No. 10-CV-1481-SI, 2011 WL 5358659, at *2 (D. Or. Nov. 7, 2011); see also Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206 (9th Cir. 2005).

Oregon's anti–SLAPP provisions "permit a defendant who is sued over certain actions taken in the public arena to have a questionable case dismissed at an early stage." Staten v. Steel, 222 Or. App. 17, 27, 191 P. 3d 778, 786 (2008). A special motion to strike is treated "as a motion to dismiss under Or. R. Civ. P. 21A and requires the court to enter a 'judgment of dismissal without prejudice' if the motion is granted." Gardner v. Martino, 563 F.3d 981, 986 (9th Cir. 2009) (applying Oregon law).

Analysis of a special motion to strike is a two-step process. "First, the defendant has the initial burden to show that the challenged statement is within one of the categories of civil actions described in [O.R.S.] 31.150(2)." Id. "[T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." Mann v. Quality Old Time Serv., Inc., 120 Cal. App. 4th 90, 102, 15 Cal. Rptr. 3d 215,

---

Defendant's motion, the only counterclaim defendant in this case is Plaintiff. See Opinion & Order, February 25, 2016, ECF 25.

220 (2004) (referring to the California anti–SLAPP statute). The required showing may be made on the basis of the pleadings alone. Staten, 222 Or. App. at 31, 191 P.3d at 788.

If the defendant meets the initial burden, then "the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." Or. Rev. Stat. § (O.R.S.) 31.150(3); Gardiner, 563 F.3d at 986. In making this determination, the Court must take the facts from the pleadings and from the supporting and opposing affidavits, O.R.S. 31.150(4), and state them "in the light most favorable to plaintiffs." Mullen v. Meredith Corp., 271 Or. App. 698, 702, 353 P.3d 598, 601-02 (2015) (quotation omitted). The court must deny the motion "[i]f the plaintiff meets this burden." O.R.S. 31.150(3).

Oregon courts look to California case law in construing Oregon's anti-SLAPP statute because Oregon's law was "modeled on California statutes" and '[i]t was intended that California case law would inform Oregon courts regarding the application of ORS 31.150 to ORS 31.155." Page v. Parsons, 249 Or. App. 445, 461, 277 P.3d 609, 619 (2012) (discussing the Oregon anti-SLAPP statute's legislative history). Therefore, this Court's analysis relies on both California and Oregon case law.

## DISCUSSION

Plaintiff invokes Oregon's anti-SLAPP statute to strike Defendant's counterclaims of defamation, intentional infliction of emotional distress (IIED), and aiding and abetting. Under Oregon's anti-SLAPP statute, a defendant may make a special motion to strike against a claim in a civil action that arises out of:

(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

5 - OPINION & ORDER

    (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

    (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

    (d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

O.R.S. 31.150(2).

Plaintiff's initial motion to strike contended that Defendant's counterclaims are subject to an anti-SLAPP motion because the counterclaims arise out of statements or conduct described in §§31.150(2)(b), (c), and (d). However, upon review of cases interpreting anti-SLAPP statutes in Oregon and California, it appeared to this Court that Plaintiff's communication to Judge Jones' courtroom deputy was subject to an anti-SLAPP motion for a different reason—Plaintiff's statement would be considered preparatory to or in anticipation of commencing official proceedings and thus would be protected as a statement made in a proceeding authorized by law under O.R.S. 31.150(2)(a) or (b). Because Plaintiff did not make this argument, the Court ordered further briefing from the parties to ensure that each party had the opportunity to be heard on the issue. See Order, August 15, 2016, ECF 60. After reviewing the parties' supplemental memoranda, the Court concludes that Defendant's counterclaims are subject to Oregon's anti-SLAPP provisions and, thus, the Court strikes the counterclaims.

**I.**      **Plaintiff's statement was made in a "judicial proceeding or other proceeding authorized by law."**

Oregon's anti-SLAPP statute provides that a defendant may make a special motion to strike against a claim in a civil action that arises out of a statement made in a "judicial proceeding or other proceeding authorized by law." O.R.S. 31.150(2)(a). While this Court does

not find binding precedent interpreting this portion of Oregon's law, cases from California are instructive.

There can be no dispute that O.R.S. 31.150(2)(a) encompasses statements reporting wrongdoing to police. See Van Der Valk v. AU Energy, LLC, No. B252975, 2014 WL 6632930, at *4 (Cal. Ct. App. Nov. 24, 2014) (holding that anti-SLAPP statute encompasses statements made to police in response to a perceived wrongdoing for the purpose of garnering police assistance); Comstock v. Aber, 212 Cal. App. 4th 931, 941–42, 151 Cal. Rptr. 3d 589, 598 (2012) ("The law is that communications to the police are within SLAPP."); Chabak v. Monroy, 154 Cal. App. 4th 1502, 1512, 65 Cal. Rptr. 3d 641, 648 (2007) (in action by physical therapist against client alleging false report of child abuse, client's "statements to police clearly arose from protected activity"); Walker v. Kiousis, 93 Cal. App. 4th 1432, 1439, 114 Cal. Rptr. 2d 69, 75 (2001) (finding that a citizen's complaint to the police is "made in connection with an official proceeding authorized by law"). The issue, therefore, is whether the anti-SLAPP statute also encompasses a statement to a courtroom deputy reporting potential wrongdoing. The Court finds that it does.

California courts have concluded that the anti-SLAPP statute protects not only communications in a judicial or official proceeding, but also "[c]ommunications that are preparatory to or in anticipation of commencing official proceedings." Siam v. Kizilbash, 130 Cal.App.4th 1563, 31 Cal. Rptr. 3d 368, 374 (Cal. Ct. App. 2005); see also ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1009, 113 Cal. Rptr. 2d 625, 640 (2001) (filing a complaint with the purpose of soliciting an SEC investigation constitutes a "statement before an official proceeding"); Lee v. Fick, 135 Cal. App. 4th 89, 97, 37 Cal. Rptr. 3d 375, 379 (2005), as modified (Dec. 23, 2005) (parents' formal complaints to school board were "part of the official

7 - OPINION & ORDER

proceedings" that followed). For example, in Siam, the court held that a father's report of child abuse to people who were legally required to report the abuse to the authorities was protected by the anti-SLAPP statute. Siam v. Kizilbash, 130 Cal. App. 4th 1563, 1570, 31 Cal. Rptr. 3d 368, 374 (2005). The court reached this conclusion notwithstanding the fact that the ensuing child abuse case was determined to be unfounded. Id.

Similarly, in Ortega v. Morales, No. A120684, 2009 WL 778318 (Cal. Ct. App. Mar. 25, 2009), Morales, a customer at Club One, sued Club One and massage therapist Ortega after Ortega sexually assaulted Morales during a massage. Ortega filed counterclaims against Morales based on statements Morales made to Club One's assistant manager about Ortega's conduct during the massage. Id. at *5. The court granted Morales' anti-SLAPP motion, holding that Morales' statements to Club One were protected activity. Id. The court reasoned that Morales' statements to Club One "must be deemed protected activity just as much as her later statement to the police and Club One's statement to the police," given the statutory mandate to interpret the anti-SLAPP statute broadly to protect free speech rights. Id. Furthermore, Morales' statements to Club One were "preparatory to or in anticipation of her report of Ortega's alleged sexual assault to the police." Id. at 6. The court concluded that, even though Club One was not legally required to call the police as a result of Morales' report, "one possible reasonable inference arising from Morales telling Club One their employee sexually assaulted her is that she anticipated a judicial or official proceeding." Id.; see also Chabak, 154 Cal. App. 4th at 1512, 65 Cal. Rptr. 3d at 648 (minor's report to her parents concerning her physical therapist's sexual abuse was directly related to her report to the police and constituted protected activity). In other words, communications are protected when they are made seeking "official investigations into perceived

wrongdoing, which might culminate in criminal prosecution or other official proceedings." Salma v. Capon, 161 Cal. App. 4th 1275, 74 Cal. Rptr. 3d 873, 882 (Cal. Ct. App. 2008).

Here, Plaintiff's statement to Judge Jones' deputy is protected as a statement made in anticipation of a proceeding authorized by law. A reasonable inference arising from Plaintiff's statement was that he anticipated an investigation into Defendant's alleged threat towards Judge Jones. Whether or not the threat was real, Plaintiff's statement was made with the purpose of obtaining assistance to address wrongdoing. The distinction between making the report to Judge Jones' courtroom deputy and the U.S. Marshals is a distinction without a difference under these circumstances.

Defendant's arguments to the contrary are unavailing. Defendant devotes the bulk of his supplemental brief to a discussion of the litigation privilege and the reasons why it does not apply in this case. Defendant asserts, without any support, that "Oregon case law precedence is limited on the application of Oregon Anti-Slapp law to communications in connection with anticipated litigation." Def.'s Supp. Mot. 4, ECF 63. The Court is unpersuaded by this unsupported conclusory statement. The Court decides this motion based on its interpretation of Oregon's anti-SLAPP law and its application to statements made in a proceeding authorized by law. The litigation privilege, while discussed in many California cases on this topic because of its overlap with the anti-SLAPP statute, is simply not at issue. See, e.g., Neville v. Chudacoff, 160 Cal. App. 4th 1255, 1262–63, 73 Cal. Rptr. 3d 383, 388–89 (2008) (explaining that the litigation privilege and anti-SLAPP statutes serve similar policy interests but are not coextensive or substantively the same).

Defendant also argues that Plaintiff's statements do not fall within the purview of the anti-SLAPP statute because they were not made directly to law enforcement and they were false.

As discussed above, the Court finds that, in this case, the report to Judge Jones' courtroom deputy was the equivalent of a report to the U.S. Marshals and, alternatively, is protected because the courtroom deputy would obviously relay such a report to law enforcement. As to the alleged falsity of the report, Defendant's counterclaim alleges that "[t]he information provided to the U.S. Marshal Service was that Judge Jones was contacted and directed to a blog post written by Defendant, which Plaintiff represented as a threat to Judge Jones." Sec. Am. Answer 11, ECF 29. The Court fails to see how any aspect of Plaintiff's statement, which essentially just referred the courtroom deputy to Defendant's blog, could be false. Any interpretation of the blog, such as whether the language used was threatening, would clearly be Plaintiff's opinion as opposed to a true or false statement.

"[T]he plain language of Section 31.150(2) indicates a legislative intent not to limit application of the special motion to strike procedure to any narrow set of circumstances, but rather to capture a broad range of claims arising both directly and indirectly out of acts of free and/or privileged speech." Schwern v. Plunkett, No. 3:14-CV-00146-PK, 2014 WL 3361902, at *8 (D. Or. July 7, 2014) (citing Horton v. Western Protector Ins. Co., 217 Or. App. 443, 448 n. 2 (2008) (noting the broad scope of the language and disjunctive structure of Section 31.150(2), and suggesting that the provision would in that respect be inconsistent with a legislative intent to limit the application of the special motion to strike procedure narrowly)). Furthermore, as the Schwern court explained:

> [I]t seems clear that any overly limited construction of the scope of Section 31.150(2) would tend directly to frustrate the purpose of the statutory scheme by systematically failing to provide the intended procedural and substantive protections to all victims of meritless lawsuits calculated to chill protected speech conduct, whereas the risk of prejudicing plaintiffs through overly broad construction of the provision is effectively mitigated at the second step of the two-step process, at which only entirely baseless claims are stricken, and consequent dismissal is without prejudice.

10 - OPINION & ORDER

Schwern, 2014 WL 3361902, at *8. In light of the mandate to construe the anti-SLAPP statute broadly, and taking into account all of the persuasive authority from California courts, this Court concludes that Plaintiff's statement falls within the purview of § 31.150(2)(a).

## II.     Defendant fails to establish a probability of prevailing on his claims

The burden shifts to Defendant to establish through the presentation of substantial evidence that there is "a probability" on a *prima facie* basis that he will ultimately prevail as to each of his counterclaims. O.R.S. 31.150(3). The Oregon Court of Appeals recently explained:

> Although the statute refers to a plaintiff's need to show a "probability" of prevailing on the claim in order to proceed, we have interpreted that standard, in this context, as a "low bar." Young, 259 Or. App. at 508, 314 P.3d 350. To clear that low bar, a plaintiff has the burden of presenting substantial evidence to support a *prima facie* case against the defendant. Id. Typically, a plaintiff will not have access to discovery before being required to defend against a special motion to strike. See ORS 31.152(2) ("All discovery in the proceeding shall be stayed upon the filing of a special motion to strike under ORS 31.150."). Therefore, a plaintiff may meet the burden of production by producing direct evidence, reasonable inferences that may be drawn from that evidence, and "affidavits setting forth such facts as would be admissible in evidence." OEA v. Parks, 253 Or. App. 558, 567, 291 P.3d 789 (2012). "[T]he trial court may not weigh the plaintiff's evidence against the defendant's" and "may consider defendant's evidence only insofar as necessary to determine whether it defeats plaintiff's claim as a matter of law." Young, 259 Or. App. at 509–10, 314 P.3d 350.

Handy v. Lane Cty., 274 Or. App. 644, 652, 362 P.3d 867, 874 (2015), review allowed, 358 Or. 550, 368 P.3d 25 (2016); see also Yes On 24-367 Comm. v. Deaton, 276 Or. App. 347, 361-62, 367 P.3d 937, 946 (2016). Only claims that entirely lack merit under that forgiving standard are to be stricken at the second step of the two-step process. See O.R.S. 31.150(3).

Defendant brings claims of defamation, IIED, and aiding and abetting. For the following reasons, Defendant fails to meet his burden on each claim as a matter of law.

   a. Defamation

The elements of a claim for defamation are: (1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement

11 - OPINION & ORDER

is defamatory *per se* and therefore gives rise to presumptive special harm. L & D of Oregon, Inc. v. Am. States Ins. Co., 171 Or. App. 17, 22, 14 P.3d 617, 620 (2000); Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania v. Starplex Corp., 220 Or. App. 560, 584, 188 P.3d 332, 347 (2008). A defamatory statement is one that would subject another to "hatred, contempt or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." Id. (quoting Marleau v. Truck Ins. Exch., 333 Or. 82, 94, 37 P.3d 148, 154 (2001)).

      Defendant concedes that he does not actually know what was conveyed to Judge Jones' deputy or who conveyed the message, but he insists that "it suggested a threat," Def.'s Resp. 19, ECF 42, and that plaintiff, plaintiff's counsel, or related parties contacted Judge Jones' chamber, Def. Second Am. Answer ¶ 31, ECF 29. However, allegations are not the same as evidence. O'Connor v. Cty. of Clackamas, No. 3:11-CV-1297-SI, 2012 WL 3756321, at *17 (D. Or. Aug. 28, 2012) ("Plaintiffs may not rely on their pleading allegations in response to a motion to strike under Oregon's Anti–SLAPP law).

      The only evidence Defendant submits as to what statement was made is an email from an attorney, Mr. Hasson, to Defendant. Rote Decl. Att. 12, ECF 43-12. The email states:

> Received a message at office to call US Marshall [sic] about Rote. After gfing [sic] with you, called number and US Marshall asked if I represented you. I said yes. He said there was a concern about you related to Judge Jones' reception that evening. He asked if he should be concerned about you and I said no. I told him I was with you and would have you call him. . . . I told him I thought the complaint was from [Linda] Marshall but he said the call came from Judge Jones office.

Id. Defendant emailed back: "The commentary that this was a threat of harm is important. Is that what the US Marshals conveyed to you." Id. Mr. Hasson responded: "The US Marshall [sic] was investigating if you presented a threat to Judge Jones at the reception. I assured him that they did

is defamatory *per se* and therefore gives rise to presumptive special harm. L & D of Oregon, Inc. v. Am. States Ins. Co., 171 Or. App. 17, 22, 14 P.3d 617, 620 (2000); Nat'l Union Fire Ins. Co. of Pittsburgh Pennsylvania v. Starplex Corp., 220 Or. App. 560, 584, 188 P.3d 332, 347 (2008). A defamatory statement is one that would subject another to "hatred, contempt or ridicule . . . [or] tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." Id. (quoting Marleau v. Truck Ins. Exch., 333 Or. 82, 94, 37 P.3d 148, 154 (2001)).

    Defendant concedes that he does not actually know what was conveyed to Judge Jones' deputy or who conveyed the message, but he insists that "it suggested a threat," Def.'s Resp. 19, ECF 42, and that plaintiff, plaintiff's counsel, or related parties contacted Judge Jones' chamber, Def. Second Am. Answer ¶ 31, ECF 29. However, allegations are not the same as evidence. O'Connor v. Cty. of Clackamas, No. 3:11-CV-1297-SI, 2012 WL 3756321, at *17 (D. Or. Aug. 28, 2012) ("Plaintiffs may not rely on their pleading allegations in response to a motion to strike under Oregon's Anti–SLAPP law).

    The only evidence Defendant submits as to what statement was made is an email from an attorney, Mr. Hasson, to Defendant. Rote Decl. Att. 12, ECF 43-12. The email states:

> Received a message at office to call US Marshall [sic] about Rote. After gfing [sic] with you, called number and US Marshall asked if I represented you. I said yes. He said there was a concern about you related to Judge Jones' reception that evening. He asked if he should be concerned about you and I said no. I told him I was with you and would have you call him. . . . I told him I thought the complaint was from [Linda] Marshall but he said the call came from Judge Jones office.

Id. Defendant emailed back: "The commentary that this was a threat of harm is important. Is that what the US Marshals conveyed to you." Id. Mr. Hasson responded: "The US Marshall [sic] was investigating if you presented a threat to Judge Jones at the reception. I assured him that they did

not have to be concerned about you." Id. Nothing about that email exchange constitutes evidence of the existence of or the content of a statement made by Plaintiff to Judge Jones' deputy.

Plaintiff submits the declaration of his attorney, Joel Christiansen, which states:

After reviewing Rote's comments contained in Chapter 19, Linda Marshall (Plaintiff's counsel in another matter) and I contacted Judge Jones' courtroom deputy and informed the court of Rote's publication concerning Judge Jones, which: (1) identified Judge Jones' physical location at a specific time and location to receive a lifetime achievement award, (2) evidenced Rote's belief that there would be media presence at the event, and (3) commented that "perhaps more often than not our legacies are not what we wanted them to be."

Christiansen Decl. ¶ 5, ECF 41. Defendant does not submit any evidence to contradict this representation.

The Court assumes, without deciding, that Defendant can bring a claim of defamation against Plaintiff despite failing to refute the evidence that any allegedly defaming statement was made by Plaintiff's attorneys, not by Plaintiff. See L & D of Oregon, 171 Or. App. at 22, 14 P.3d at 620 (stating that "the making of a defamatory statement" is the first required element of a claim for defamation). No matter who made the report to the courtroom deputy, a statement suggesting that Defendant's blog post constituted a threat is an opinion statement protected by the First Amendment. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990) (statement of opinion relating to matters of public concern that do not contain a provably false factual connotation will receive full constitutional protection); Obsidian Fin. Grp., LLC v. Cox, 740 F.3d 1284, 1291-92 (9th Cir.) ("[P]ublic allegations that someone is involved in crime generally are speech on a matter of public concern.").

Defendant acknowledges that "[t]he First Amendment absolutely protects opinion speech." Def.'s Resp. 17, ECF 42. However, Defendant argues that Plaintiff's statement to Judge Jones' deputy regarding Defendant's intent in writing the blog post was not an opinion but,

13 - OPINION & ORDER

rather, a "false assertion of objective fact." Def.'s Resp. 17, ECF 42. In order to determine whether a reasonable factfinder could conclude that a statement implies an assertion of objective fact, the Ninth Circuit has announced a three part-test, which the Oregon Supreme Court recently adopted. Neumann v. Liles, 358 Or. 706, 717, 369 P.3d 1117, 1124 (2016) (adopting the test from Uneiko, 912 F.2d 1049); see also Obsidian Finance Group, 740 F.3d at 1293. Applying that test to the present case, this Court must ask: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." Uneiko, 912 F.2d at 1053.

Even taking the facts as alleged by Defendant in the light most favorable to him, Defendant is unable to show that Plaintiff's statement was a false assertion of objective fact. First, the general tenor of Plaintiff's statement suggests that Plaintiff was making the courtroom deputy aware of the post and offering an opinion as to what the post's language meant, not asserting an objective fact about the interpretation of the post. Second, because Defendant does not know what exact language was used by Plaintiff, the Court is unable to opine whether it was "figurative or hyperbolic." Finally, the statement in question is not capable of being proved true or false. Plaintiff directed the deputy to the blog and offered an opinion as to what Defendant's intent was in writing the post. Because there is no way Plaintiff could have actually known Defendant's intent, given that Plaintiff only saw the post on the internet, it is clear that Plaintiff was offering an opinion to Judge Jones' deputy rather than asserting a fact.

In sum, Plaintiff's statement was an expression of opinion on a matter of public concern that is protected under the First Amendment. Therefore, Defendant fails to establish a probability on a *prima facie* basis that he will prevail on his defamation claim.

ii.  IIED and Aiding and Abetting Claims

As to Defendant's IIED and aiding and abetting counterclaims, Defendant presents no argument or evidence as to how he can support a *prima facie* case regarding either claim. For this reason alone, the Court could grant Plaintiff's motion to strike because Defendant has not met his burden. Young, 259 Or. App. at 508, 314 P.3d 350 (explaining that the party bringing the claim has the burden of presenting substantial evidence to support a *prima facie* case). Id.

Furthermore, Defendant cannot show the elements of an IIED claim:

(1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; (2) that defendants engaged in outrageous conduct, *i.e.*, conduct extraordinarily beyond the bounds of socially tolerable behavior; and (3) that defendants' conduct in fact caused plaintiff severe emotional distress.

McLean v. Pine Eagle Sch. Dist., No. 61, No. 3:15-CV-654-SI, 2016 WL 3574017, at *18 (D. Or. July 1, 2016) (citing House v. Hicks, 218 Or. App. 348, 357–58, 179 P.3d 730 (2008)); see also McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995)). No reasonable factfinder could conclude that the alleged statement to Judge Jones' deputy constituted "outrageous conduct." Defendant's IIED claim fails as a matter of law.

As to Defendant's "aiding and abetting" claim, the Court finds no support for the proposition that Oregon recognizes this as an independent tort. See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 181 (1994) ("Indeed, in some States, it is still unclear whether there is aiding and abetting tort liability[.]").In states that do recognize such a tort, the tort is predicated upon the existence of some tortious conduct of other parties. See, e.g., Saunders v. Superior Court, 27 Cal. App. 4th 832, 846, 33 Cal. Rptr. 2d 438, 446 (1994) ("Liability may also be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives

substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."). Because Defendant fails to establish any tortious conduct of Plaintiff or anyone else, this claim necessarily fails.

## CONCLUSION

The Court grants Plaintiff's Motion to Strike [40]. If Defendant wishes to amend his counterclaims, he must seek leave to amend pursuant to Federal Rule of Civil Procedure 15 and Local Rule 15-1. Upon receipt of this Opinion & Order, the parties are instructed to contact the Court to set a scheduling conference to reset the case schedule.

IT IS SO ORDERED.

Dated this __24__ day of __September__, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge

16 - OPINION & ORDER