IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAX ZWEIZIG,

        Plaintiff/
        Counter Defendant,

    v.

NORTHWEST DIRECT TELESERVICES, INC.;
NORTHWEST DIRECT MARKETING OF
OREGON, INC.; TIMOTHY ROTE;
NORTHWEST DIRECT MARKETING
(DELAWARE), INC.; NORTHWEST DIRECT
OF IOWA, INC.; ROTE ENTERPRISES, LLC;
NORTHWEST DIRECT MARKETING, INC.;
DOES 1-5.
        Defendants/Counter Claimants.

No. 3:15-cv-02401-HZ

OPINION & ORDER

Joel W. Christiansen
812 NW 17th Avenue
Portland, OR 97209

    Attorney for Plaintiff/Counter Defendant

Timothy Rote
24790 SW Big Fir Road
West Linn, OR 97068

     Pro Se Defendant/Counter Claimant

HERNÁNDEZ, District Judge:

     Pro se Defendant/Counter Claimant Timothy Rote brings three motions: (1) Motion to

Dismiss for Lack of Subject Matter Jurisdiction; (2) Motion for Judicial Notice; and (3) Motion

for Leave to Amend Counterclaims. The Court denies all of Defendant's motions.

## BACKGROUND

     The parties' litigation history in this matter was set forth by this Court in a prior Opinion

& Order:

> Plaintiff Max Zweizig alleges that he was terminated by Defendant Northwest Direct
> Teleservices, Inc. (NDT), a corporate entity owned by Timothy Rote, after Zweizig
> reported to the Oregon Department of Justice and the Lane County District Attorney that
> NDT had engaged in criminal activity. Compl. ¶¶ 17-18, ECF 1. Zweizig also alleges that
> Rote and NDT took other adverse actions against Zweizig, including publishing
> statements to third parties and the general public accusing Zweizig of destroying data and
> engaging in other criminal and civil misconduct during his employment at NDT. Id. at ¶
> 18.
>
> The parties engaged in arbitration related to this employment dispute for several years
> and, ultimately, an arbitrator found in Zweizig's favor and awarded damages to Zweizig.
> Id. at ¶ 21. The arbitration award was reduced to a judgment; however, NDT has failed to
> satisfy that judgment. Id. at ¶ 22. On March 11, 2014, Zweizig filed a lawsuit against
> NDT, Rote, and related corporate entities, alleging that the defendants violated the
> Uniform Fraudulent Transfer Act and engaged in other fraudulent activity to defeat
> Zweizig's ability to enforce his whistleblower retaliation judgment. Id. at ¶ 23.
>
> On or about February 27, 2015, Defendants created a website, "Sitting Duck Portland,"
> which describes the arbitration between Rote's companies and Zweizig. Id. at ¶ 25.
> According to Zweizig, the Sitting Duck Portland website disparages Zweizig, his fiancée,
> and his counsel. Id. at ¶ 27.
>
> On December 24, 2015, Zweizig filed the present employment discrimination action
> against Rote, a citizen of Oregon; six corporate entities allegedly owned by Rote,
> including NDT; and five Doe defendants. Zweizig alleges that the content of the Sitting
> Duck Portland website constitutes a series of ongoing adverse employment actions

targeted at Zweizig due to his participation in protected conduct. Id. at ¶ 28. Zweizig brings claims of whistleblower discrimination and retaliation, retaliation for opposing unlawful conduct, and aiding and abetting. Id. at ¶¶ 31-57.

Zweizig v. Nw. Direct Teleservices, Inc., No. 3:15-CV-02401-HZ, 2016 WL 755626, at *1 (D. Or. Feb. 25, 2016).

On March 10, 2016, Defendant filed a second amended answer to Plaintiff's complaint. Second Am. Answer, ECF 29. In this second amended answer, Defendant asserted seven counterclaims. Id. On August 17, 2016, this Court granted Plaintiff's motion to dismiss Defendant's counterclaims. Opinion & Order (O&O), ECF 61.

## DISCUSSION

I.    **Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A.  Plaintiff's Claims Against Defendant

Defendant seeks to dismiss all of Plaintiff's claims. However, one of those claims (which has two counts) is brought against the Corporate Defendants only. As this Court has previously informed Defendant, he may not represent the Corporate Defendants.  See United States v. High Country Broad. Co., 3 F.3d 1244, 1245 (9th Cir. 1993) (stating that a corporation may appear in federal court only through licensed counsel); see also 28 U.S.C. § 1654. Thus, the Court only considers Defendant's motion to dismiss the two claims Plaintiff brings against Defendant in his individual capacity: (1) Retaliation for Opposing Unlawful Conduct in Violation of Oregon Revised Statute § (O.R.S.) 659A.030(1)(f); and (2) Aiding and Abetting in Violation of O.R.S. 659A.030(1)(g). Defendant contends that these claims should be dismissed because they are subject to arbitration. The Court denies Defendant's motion to dismiss.

B.  Standard

The Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), removes the Court's subject matter jurisdiction to hear a claim when there is a valid, enforceable arbitration clause.

3 - OPINION & ORDER

Therefore, Defendant's motion to dismiss is "one means to raise its arbitration defense. In effect, [Defendants'] motion is a petition to this court within the meaning of § 4 of the FAA." Rogue v. Applied Materials, Inc., No. 03:03–cv–1564–ST, 2004 WL 1212110, at *4 (D. Or. Feb. 20, 2004).

The FAA limits the Court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue. Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014). Written agreements to arbitrate arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If the issue is referable to arbitration under the agreement, then the Court must direct the issue to arbitration and stay the trial. 9 U.S.C. § 3. An agreement to arbitrate is to be "rigorously enforce[d.]" Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).

C.  Arbitration Agreement

Defendant contends that this Court lacks subject matter jurisdiction over Plaintiff's claims because the claims are encompassed by a 2001 Employment Agreement ("Agreement") entered into by Plaintiff and Defendant Northwest Direct Teleservices, Inc. ("NDT") that mandates the use of arbitration to resolve disputes arising out of or related to Plaintiff's employment with NDT. See Rote Decl. Ex. A, ECF 79-1.[1] Defendant's argument fails for several reasons.

---

[1] Defendant includes the Agreement as an attachment to the "Declaration of Timothy Rote on Defendant Rote's Motion for Summary Judgment." ECF 79. The footer of that document states "Declaration of Timothy C. Rote in Opposition to Plaintiff's Motion to Dismiss Counterclaims. Id. The Court assumes that Defendant erred in the labeling of his declaration and the footer, and the Court construes the exhibit as corresponding to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. However, Defendant is warned to be more careful in the future in order to avoid confusion.

Defendant is not a signatory to the Agreement, although he did sign the Agreement on behalf of NDT. Defendant fails to explain how claims against him, as a non-signatory individual, fall within the Agreement. See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); see also Rajagopalan v. Note World, LLC, 718 F.3d 844, 847 (9th Cir. 2013) ("We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here."); Murphy v. DirecTV, Inc., 724 F.3d 1218, 1229 (9th Cir. 2013) ("generally only signatories to an arbitration agreement are obligated to submit to binding arbitration"). Where other circuits have granted motions to compel arbitration on behalf of non-signatory defendants against signatory plaintiffs, it was "essential in all of these cases that the subject matter of the dispute was intertwined with the contract providing for arbitration." Rajagopalan v. NoteWorld, LLC, 718 F.3d 844, 847 (9th Cir. 2013) (quoting Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045 (9th Cir. 2009)). Here, the subject matter of the dispute—the content and allegedly disparaging nature of Defendant's blog posts—is not intertwined with the parties' 2001 Agreement. For this reason, Defendant's argument fails.

Even if Defendant could show that the Agreement applies to the claims against him, Defendant's attempt to dismiss this case due to the Agreement's arbitration provision fails because he waived his right to compel arbitration. See Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 758 (9th Cir. 1988) (finding waiver of right to arbitration); Antuna v. Am. W. Homes, Inc., 232 F. App'x 679 (9th Cir. 2007) (unpublished) (same). "A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party

opposing arbitration resulting from such inconsistent acts." Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986).

Under the first prong of Fisher, the Court finds that Defendant has known of his right to compel arbitration since he signed the Agreement on behalf of NDT in 2001. In addition, Defendant declares that he used the Agreement to compel arbitration with Plaintiff in 2006. Rote Decl. ¶¶ 3-4, ECF 79.

As to the second Fisher prong, Defendant has acted inconsistently with the right to arbitrate by actively defending himself in the present case and filing counterclaims against Plaintiff. As noted above, this case was filed against Defendant in December of 2015 and Defendant first filed an answer in January of 2015. Since that time, Defendant has submitted multiple filings in this case, including a motion to join counterclaim defendants and responses to Plaintiff's motions to strike and dismiss. Defendant has also participated in several hearings before the Court. Now, for the first time, Defendant asserts that Plaintiff's claims are subject to arbitration. Such behavior is inconsistent with a right to arbitrate. See, e.g., Martin v. Yasuda, 829 F.3d 1118, 1126 (9th Cir. 2016) (finding defendants' behavior inconsistent with a right to arbitrate when they "did not even note their right to arbitration until almost a year into the litigation"); Van Ness Townhouses, 862 F.2d at 759 (a party's "extended silence and much-delayed demand for arbitration indicates a conscious decision to continue to seek judicial judgment on the merits of the arbitrable claims") (internal quotation marks omitted).

Finally, the third Fisher prong is satisfied because Plaintiff would be prejudiced if this case were dismissed in favor of arbitration. Similar to Defendant, Plaintiff has vigorously litigated this case for a year. The Court has set a 2017 trial date. See Trial Mgmt. Order, ECF 76.

To delay this case any further would cause prejudice. Therefore, the Court finds that Defendant waived any right to arbitration.

        D.  Ripeness and Mootness

        Defendant argues that any claims Plaintiff has with respect to Defendant's blog are based on a speculative future adverse employment action. Thus, Defendant argues that the claims are not ripe and should be dismissed. He also argues the claims are moot because he has removed and redacted Plaintiff's name from indexable material on the blog.

        Defendant's arguments fail. At this stage of the proceeding, the Court must view all facts in the light most favorable to Plaintiff. According to Plaintiff, as recently as September 12, 2016, Defendant wrote a blog post that falsely implied Plaintiff had engaged in wrongdoing. Christiansen Dec. ¶ 4, Ex. 2, ECF 84-2. Thus, Plaintiff's claims are ripe and are not moot.

## II.    Motion for Judicial Notice

        Defendant asks the Court to take judicial notice of two exhibits: (1) documents provided by the U.S. Marshals to Defendant regarding a telephone call that Plaintiff's counsel made to Judge Jones; and (2) a declaration by Defendant's brother, Gregory Rote, refuting statements made in a declaration of Plaintiff's counsel. Defendant also asks the Court to take judicial notice of several paragraphs of argument regarding factual disputes in this case.

        Under Federal Rule of Evidence 201(b), the Court may take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." A court may not take judicial notice of a matter that is in dispute. Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001). A party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice. In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 781

(Bankr. E.D. Cal. 1992) (citing In re Blumer, 95 B.R. 143, 146 (B.A.P. 9th Cir. 1988)). Neither the documents nor Defendant's arguments are sources "whose accuracy cannot reasonably be questioned." Therefore, the Court denies Defendant's request for judicial notice.

However, the Court considers the documents under the doctrine of incorporation by reference. A document need not be attached to the complaint to be incorporated into it by reference if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). A document is incorporated by reference if (1) the complaint refers to it; (2) the document is central to the plaintiff's claim; and (3) no party questions the document's authenticity. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006). The Court may treat such a document as part of the complaint and assume its contents are true for purposes of determining whether a claim has been sufficiently alleged. Id.; see also Ritchie, 342 F.3d 908 (district court may consider materials incorporated by reference without converting the motion to dismiss into a motion for summary judgment).

Here, Plaintiff does not object to Defendant's request for the Court to consider his attachments, nor does Plaintiff question the documents' authenticity. Further, the documents are referred to in and are central to Defendant's proposed counterclaims. Thus, the Court incorporates the documents by reference into Defendant's counterclaims and assumes that their contents are true for purposes of Defendant's motion for leave to amend.

## III.    Motion for Leave to Amend

Defendant moves for leave to file a Third Amended Answer containing four counterclaims and several affirmative defenses. Defendant seeks to include counterclaims of defamation, abuse of process, intentional infliction of emotional distress, and aiding and

abetting.[2] Because Defendant's proposed counterclaims are futile[3], the Court denies his motion to add those claims. Defendant is instructed to remove all counterclaims before submitting his Third Amended Answer.

A.  Standard

Under Rule 15(a)(2), after a responsive pleading is filed, "a party may amend its pleading with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) prescribes that "[t]he court should freely give leave when justice so requires." Id. "'This policy is to be applied with extreme liberality.'" C.F. ex rel Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 985 (9th Cir. 2011) (quoting Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003)). However, "the liberality in granting leave to amend is subject to several limitations. Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citations omitted).

B.  Alleged Violation of Stipulated Protective Order

In Plaintiff's Response to Defendant's Motion for Leave to Amend, Plaintiff contends that Defendant attached the deposition of Plaintiff from another case in this District, Max Zweizig v. Timothy C. Rote, et al., 3:14-cv-00406-YY, in violation of the Stipulated Protective Order from that case.  In Defendant's Reply, he submits a copy of an email from himself to Plaintiff's counsel in which he challenges the designation of Plaintiff's testimony as confidential.

---

[2] In Defendant's Reply, he abandons his effort to add an additional counterclaim for "civil extortion." Rote Reply at 9, ECF 91.

[3] In addition, to the extent Defendant seeks to bring these counterclaims against "Plaintiff and Plaintiff Counsel," the Court reiterates its prior ruling denying Plaintiff's motion to join parties as counterclaim defendants. O&O, Feb. 25, 2016, ECF 25. The only potential counterclaim defendant in this case is Plaintiff.

According to Defendant, because Plaintiff's counsel never responded to the email, the deposition testimony is no longer subject to the Protective Order.

> The Protective Order provides:
>
> In the event that any party to this litigation disagrees at any point in these proceedings with any designation made under this Protective Order, the parties shall first try to resolve such dispute in good faith on an informal basis. If **plaintiff** provides a written objection to the designating party as to the designation of material as confidential, the designating party shall submit a motion to the court within twenty-one (21) days of such objection, or the material will not be subject to this order. If a motion is timely filed by the designating party, the designated document or information shall continue to be treated as "Confidential" subject to the provisions of this Protective Order, pending a ruling by the Court.

Marshall Decl. Ex. 1 ("Protective Order") ¶ 4, ECF 90-1 (emphasis added). As emphasized above, the Protective Order as entered provides a mechanism for Plaintiff to object to the designation of material as confidential. It does not, however, provide the same mechanism to Defendant. The Court assumes this may have been a scrivener's error; however, the parties will have to resolve that potential error in the case in which the Protective Order was entered. As applied to this case, Defendant is unable to refute Plaintiff's contention that he violated the Protective Order by attaching Plaintiff's deposition to his Proposed Third Amended Answer. Accordingly, the Court strikes the exhibit and removes it from the record. Until the parties resolve the issue of the Protective Order in case 3:14-00406-YY, Defendant is ordered not to include the deposition transcript or its contents in further filings in this case.

    C.  Background

    Defendant's counterclaims are based on alleged behavior by Plaintiff or his counsel in response to a blog post by Defendant that referenced U.S. District Court Judge Robert E. Jones. Defendant alleges that on November 12, 2015, Plaintiff's counsel Joel Christiansen and Linda Marshall contacted Judge Jones' chambers and alleged that Defendant intended to harm or posed

a threat to Judge Jones at his Lifetime Achievement Award ceremony. Proposed Third Am.

Answer ¶ 32, ECF 86-2. Plaintiff's counsel also accused Defendant of stalking his ex-wife with a

handgun and having been previously arrested. Id. at ¶ 33. Plaintiff's counsel also alleged that

Defendant had been engaged in fraud and that "the U.S. District Court has a history of finding

against Rote." Id. at ¶ 33.

 D.  Defamation

 Defendant contends that Plaintiff defamed him when Plaintiff's counsel contacted Judge

Jones' deputy. The elements of a claim for defamation are: (1) the making of a defamatory

statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the

statement is defamatory *per se* and therefore gives rise to presumptive special harm. L & D of

Oregon, Inc. v. Am. States Ins. Co., 171 Or. App. 17, 22, 14 P.3d 617, 620 (2000); Nat'l Union

Fire Ins. Co. of Pittsburgh Pennsylvania v. Starplex Corp., 220 Or. App. 560, 584, 188 P.3d 332,

347 (2008).

 The Court assumes, without deciding, that Defendant can bring a claim of defamation

against Plaintiff even though Defendant admits that any allegedly defaming statements were

made by Plaintiff's attorneys, not by Plaintiff. See Bleeck v. Mangold, 92 Or. App. 200, 203, 757

P.2d 456, 458 (1988) (finding that an attorney who sent an allegedly defamatory letter to an

opposing party acted as his client's agent). In addition, the Court finds that the statements were

published when they were made to Judge Jones' courtroom deputy. Nevertheless, Defendant fails

to state a claim for defamation.

 First, as this Court has already decided in this case, a statement to Judge Jones'

courtroom deputy suggesting that Defendant's blog post constituted a threat is an opinion

statement protected by the First Amendment. See Milkovich v. Lorain Journal Co., 497 U.S. 1,

20 (1990) (statement of opinion relating to matters of public concern that do not contain a provably false factual connotation will receive full constitutional protection); Obsidian Fin. Grp., LLC v. Cox, 740 F.3d 1284, 1291-92 (9th Cir.) ("[P]ublic allegations that someone is involved in crime generally are speech on a matter of public concern."). The same protection applies to any statement opining that Defendant is unstable.

Second, Defendant's proposed counterclaim fails to allege any resulting special harm from Plaintiff's statements. Defamation claims premised on an oral statement (slander) require that a plaintiff prove either that the statement falls within one of the actionable *per se* categories or that the statement caused the plaintiff special harm. L & D of Oregon, 171 Or. App. at 24, 14 P.3d at 617. Defendant seeks $1 million in consequential damages and $5 million in punitive damages for this claim. However, there is no allegation in the defamation claim that Defendant was harmed in any way. Construing Defendant's claim liberally by considering facts alleged elsewhere in the Proposed Third Amended Answer, Defendant alleges that the contact with Judge Jones' chambers caused Defendant emotional distress. See, e.g., Third Am. Answer ¶ 48. Special harm for the purpose of a defamation claim, however, is "the loss of something having an economic or pecuniary value, such as a failure to realize a reasonable expectation of gain." Nat'l Union Fire, 220 Or. App. at 586, 188 P.3d at 348 (citing Restatement (Second) of Torts, § 575, comment b). Allegations of suffering psychological and emotional distress, humiliation and embarrassment are insufficient to allege a "special harm." L & D of Oregon, 171 Or. App. at 28, 14 P.3d at 623.

Defendant also alleges that, to the extent the statements accused Defendant of a crime, the statements are defamatory *per se*. However, as discussed above, the statements did not accuse Defendant of a crime but, rather, offered an opinion as to the significance of Defendant's

blog post about Judge Jones. Therefore, Defendant fails to state a defamation claim because he does not allege a special harm.

E.   Abuse of Process and Malicious Prosecution

Defendant alleges the following:

> As a Third and Separate Counterclaim, this Answering Defendant alleges that plaintiff is engaged in harassment in the form of Abuse of Civil Process, pursuing the claims for his benefit and designed [sic] to extort, coerce, and damage Rote financially for publishing a blog critical of an arbitration involving the plaintiff.

Proposed Third Am. Answer ¶ 42. Defendant further alleges that Plaintiff knows that his claims are subject to arbitration and are not timely filed. Id. at ¶ 43. According to Defendant, Plaintiff has an ulterior motive of forcing Plaintiff to hire counsel to represent Corporate Defendants, even though Plaintiff knows the corporations are inactive. Id. at ¶ 44.

Under Oregon law, the tort of abuse of process "is the perversion of a process that is regular on its face to a purpose for which the process is not intended." Columbia County v. Sande, 175 Or. App. 400, 408 (2001). In other words, "[t]he tort involves the use of the process as a club by which to extort something unrelated to the process from the other party." Clausen v. Carstens, 83 Or. App. 112, 118 (1986). To plead a claim of abuse of process, a plaintiff must allege (1) an ulterior purpose, beyond malice, that is unrelated to the process and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding. Columbia County, 175 Or. App. at 408; see also Hartley v. State Water Resources Dept., 77 Or. App. 517, 522 (1986) (a defendant cannot be liable for abuse of process where he has "done nothing more than carry out the process to its authorized conclusion, even though with bad intentions").

Defendant's claim fails. His description of Plaintiff's behavior does not constitute "the use of the process that is not proper in the regular conduct of the proceeding." Plaintiff has brought claims against Defendant and Corporate Defendants. Plaintiff's claims were timely filed

and Defendant waived his right to compel Plaintiff to arbitrate the claims. Further, there is no

evidence that Plaintiff engaged in this lawsuit for the ulterior purpose of forcing Defendant to

obtain counsel for Corporate Defendants. Therefore, Defendant fails to state a claim.

F.   Intentional Infliction of Emotional Distress

Defendant alleges that as a result of Plaintiff's wrongful conduct, Defendant has suffered,

and will continue to suffer, mental anguish, emotional distress, and embarrassment. Proposed

Third Am. Answer ¶ 48. Specifically, Defendant alleges:

> While defendant is not easily distressed emotionally over litigation, watching the plaintiff
> and plaintiff [sic] counsel posture one lie after another, attack his business ethics alleging
> fraudulent billing practices with no proof whatsoever, destroy evidence without
> accountability, submit false and unexamined evidence to an arbitrator privately, seek to
> enlist the help of Judge Jones twice, engage in a host of other outrageous acts, and then
> file a lawsuit when Rote exposes the corruption, one can only imagine that the otherwise
> unflappable demeanor of the defendant has been tested beyond social acceptability.

Id. at ¶ 49.

To state an IIED claim, Defendant must show that Plaintiff intended to inflict severe

emotional distress, Plaintiff's acts were the cause of Defendant's severe emotional distress, and

Plaintiff's acts constituted an extraordinary transgression of the bounds of socially tolerable

conduct. McGanty v. Staudenraus, 321 Or. 532, 563, 901 P.2d 841, 849 (1995)). "Because proof

of intent is often indirect and evidence of psychic harm is usually self-serving, proof of this tort

largely turns on . . . whether a defendant's conduct is sufficiently outrageous." House v. Hicks,

218 Or. App. 348, 358, 179 P.3d 730, 736 (2008).

Whether the alleged conduct constitutes an extraordinary transgression of the bounds of

socially tolerable conduct is a question of law for the court. Harris v. Pameco Corp., 170 Or.

App. 164, 171, 12 P.3d 524, 529 (2000). In a 2008 case, the Oregon Court of Appeals explained

the following parameters of the tort:

A trial court plays a gatekeeper role in evaluating the viability of an IIED claim by assessing the allegedly tortious conduct to determine whether it goes beyond the farthest reaches of socially tolerable behavior and creates a jury question on liability.

* * *

As explained in the Restatement [(Second) of Torts] at § 46 comment d [1965]: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

House, 218 Or. App. at 358, 179 P.3d at 736 (internal quotation marks and citations omitted).

"Whether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances." Id. Oregon law identifies "several contextual factors that guide the court's classification of conduct as extreme and outrageous." Id. at 360, 179 P.3d at 737. The most important of these factors is "whether a special relationship exists between a plaintiff and a defendant" such as employer-employee, physician-patient, or government officer-citizen. Id. Courts are concerned with whether the defendant's relationship to the plaintiff 'imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers.'" Id. (quoting McGanty, 321 Or. at 547–48, 901 P.2d at 851). Other factors include whether the conduct was undertaken with an ulterior motive or to take advantage of an unusually vulnerable individual. Id. The setting in which the conduct occurs, for example, whether it occurred in a public venue or in an employment context, also bears on the degree of its offensiveness. Id.

Here, there is no special relationship between Plaintiff and Defendant. While the parties previously had an employment relationship, Defendant has not employed Plaintiff in many years. See id. (absence of any special relationship is significant in finding no outrageous conduct). Furthermore, to the extent the parties previously had a legal relationship, it was Defendant, as

employer, who would have held the dominant position and would thus have a greater obligation to refrain from subjecting Plaintiff to emotional distress. Id. ("[C]ourts are more likely to categorize conduct as outrageous when it is undertaken by the dominant party in a legal relationship.").

In addition, there is no allegation by Defendant that Plaintiff's conduct was motivated by a desire to take advantage of an unusually vulnerable individual. To the contrary, Defendant alleges that he "is not easily distressed emotionally over litigation" and he is generally "unflappable." Proposed Third Am. Answer ¶ 49.

Instead, Defendant appears to base his claim on the assertion that Plaintiff's conduct was undertaken with an ulterior motive to gain an advantage in litigation before another judge in this District. Defendant argues in his Reply that "[i]t is reasonable to conclude that the plaintiff group may have been disseminating this false information to a much broader group, not just to law enforcement." Def.'s Reply 5, ECF 91. Defendant does not submit any evidence to support this assertion and the Court does not agree with Defendant that it would be reasonable to make such an inference based on the evidence available. Plaintiff's counsel made the statements in private to Judge Jones' courtroom deputy and the stated purpose of the phone call was to warn Judge Jones about a potential threat. These factors weigh against Defendant's assertion of IIED. See House, 218 Or. App. at 365, 179 P.3d at 740 (explaining that the "private and indirect character" of a defendant's conduct makes it less likely to be classified as outrageous). Furthermore, even if some of the statements made to Judge Jones' deputy were false, they were made "as part of an "otherwise legitimate complaint" regarding Defendant's blog post and merely "set out the context of [Defendant's] behavior." See id. at 361, 364, 179 P.3d 730.

In sum, there is no special relationship between Plaintiff and Defendant, Defendant is not a particularly vulnerable individual, and there is no evidence that the actions were taken with an ulterior motive. Even taking the alleged facts in the light most favorable to Plaintiff, no reasonable factfinder would conclude that Plaintiff's actions rose to the level of socially intolerable conduct. Defendant fails to state an IIED claim.

G.  Aiding and Abetting

This Court previously dismissed Defendant's "aiding and abetting" claim, finding no support for the proposition that Oregon recognizes this as an independent tort and noting that, in states that do recognize such a tort, the tort is predicated upon the existence of some tortious conduct of other parties. See, e.g., Saunders v. Superior Court, 27 Cal. App. 4th 832, 846, 33 Cal. Rptr. 2d 438, 446 (1994) ("Liability may also be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."). Defendant does not amend his aiding and abetting claim in any way. Because Defendant's proposed amended counterclaims fail to establish any tortious conduct of Plaintiff or anyone else, this claim necessarily fails.

**CONCLUSION**

The Court denies Defendant Rote's Motion to Dismiss for Lack of Jurisdiction [78], Motion for Judicial Notice [80] and Motion to Amend [85]. Defendant is ordered to remove all counterclaims from his Proposed Third Amended Answer and to submit the Third Amended

Answer, without any other changes, within 10 days of the date below. The Clerk is instructed to strike ECF 86-4 from the record.

IT IS SO ORDERED.

Dated this _____ day of _____, 2017.

_____
MARCO A. HERNÁNDEZ
United States District Judge