IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MAX ZWEIZIG,

    Plaintiff,

v.

NORTHWEST DIRECT TELESERVICES, INC.;
NORTHWEST DIRECT MARKETING OF
OREGON, INC.; TIMOTHY ROTE;
NORTHWEST DIRECT MARKETING
(DELAWARE), INC.; NORTHWEST DIRECT
OF IOWA, INC.; ROTE ENTERPRISES, LLC;
NORTHWEST DIRECT MARKETING, INC.;
and DOES 1-5.
    Defendants.

No. 3:15-cv-02401-HZ

OPINION & ORDER

Joel W. Christiansen
812 NW 17th Avenue
Portland, OR 97209

    Attorney for Plaintiff

Timothy Rote
24790 SW Big Fir Road
West Linn, OR 97068

    Pro Se Defendant

1 - OPINION & ORDER

HERNÁNDEZ, District Judge:

Despite arbitration, numerous lawsuits, and an inordinate expenditure of time and resources, Plaintiff Max Zweizig and pro se Defendant Timothy Rote have been unable to resolve disputes stemming from the end of an employment relationship over thirteen years ago. This Court is now faced with the latest iteration of the dispute, in which Plaintiff brings claims of "Retaliation for Opposing Unlawful Conduct," under Oregon Revised Statute § (O.R.S.) 659A.030(1)(f); and "Aiding and Abetting," under O.R.S. 659A.030(1)(g); against Defendant Rote and several corporate defendants.[1]

Plaintiff moves for summary judgment against Defendant.[2] Defendant brings a cross-motion for summary judgment against Plaintiff. The Court denies both motions.

## BACKGROUND

Plaintiff worked for corporate defendant Northwest Direct Teleservices, Inc. ("NDT") from September 1, 2001 to November 15, 2003, as Director of Information Technology. Zweizig Decl. ¶ 2, ECF 118. Plaintiff was terminated by Defendant Rote, who was NDT's owner and CEO. Zweizig Decl. ¶ 2.

On March 18, 2004, Plaintiff sued Defendant, NDT, and Doe defendants in the Superior Court of New Jersey. Zweizig Decl. Ex. 2, ECF 11-82. Plaintiff alleged that the defendants had taken adverse employment-related actions against Plaintiff because he reported civil and criminal fraud committed by NDT to law enforcement. *Id.* at ¶¶14-15.

After many years and various procedural motions, the dispute between Plaintiff and NDT ended up in arbitration in Oregon. Zweizig Decl. ¶ 6, Ex. 3. On March 31, 2011, the arbitrator

---

[1] Plaintiff's additional claim of Whistleblower Discrimination and Retaliation, under O.R.S. 659A.230 and O.R.S. 659A.199, was dismissed with prejudice on January 19, 2017. Order, ECF 100.
[2] An Order of Default was entered against the corporate defendants. *See* Clerk's Entry of Default, ECF 108.

issued an Opinion & Order. Zweizig Decl. Ex. 3 (noting the matter "had not reached a conclusion for an extended period of time"). The arbitrator found that Plaintiff was terminated in retaliation for reporting that the defendants were overbilling some of their clients. *Id.* at 5. The arbitrator awarded Plaintiff $75,375. *Id*. at 6-8; Rote Decl. Ex. D at 8, ECF 116-4.

On February 14, 2012, this Court confirmed the arbitration award. *Nw. Direct Teleservices, Inc. v. Zweizig*, No. 3:11-CV-910-PK, 2012 WL 512404, at *1 (D. Or. Feb. 14, 2012). On March 11, 2014, Plaintiff filed a lawsuit in this Court against Defendant, NDT, and related corporate entities, alleging that the defendants violated the Uniform Fraudulent Transfer Act and engaged in other fraudulent activity to defeat Plaintiff's ability to enforce the judgment from the arbitration. *Zweizig v. Rote et al.,* No. 3:14-cv-00406-HZ.[3] To date, NDT has failed to satisfy the judgment. Compl. ¶ 22, ECF 1.

On or about February 27, 2015, Defendant created a website, "Sitting Duck Portland— Another Story on Arbitrator Corruption and Costs," which describes the arbitration between Defendant, his companies, and Plaintiff. Id. at ¶ 25. Defendant published materials pursuant to a licensing agreement between NDT and himself.[4] Rote Decl. Ex. F at 5, ECF 116-6. At some point in late 2016, Defendant deleted the Sitting Duck Portland website and republished similar material on a different website, "The Explosion of Fake Whistleblowing." Zweizig Decl. ¶¶ 16-17, Ex. 12, ECF 118-12-22.

Defendant's website comprised a detailed rendition of the arbitration proceeding between Plaintiff and Defendant, including all of the different ways that Defendant considered the arbitration corrupt and unfair. *See, e.g.,* Zweizig Decl. Ex. 5 at 15, ECF 118-5 ("We will tell this

---

[3] This case is still pending.
[4] Defendant signed the agreement as CEO of NDT, on behalf of licensor NDT; and as himself, an individual licensee. Rote Decl. Ex. F at 5.

story of bias, of cronyism, or bribery, of corruption, of fraud."). Defendant explained the motivation for his website:

> Now that they . . . have alleged that we have been engaged in fraud, we might as well bring the history of their bad behavior to the world so that everyone can learn from it an[d] perhaps there will be a ground swell enough to make some changes here . . . who knows.
> * * *
> We need to monetize our experience as much as possible to pay for the defense of this baseless suit.

Zweizig Decl. Ex. 6 at 9, EC 118-6. The website also included various negative statements about Plaintiff, including comments about his appearance, his performance at the NDT job, and his trustworthiness. *Id.* One blog entry stated that Plaintiff had breached his contract with Defendant and then had "sought whistle blower type protection to save his job." *Id.* at 3. Defendant also accused Plaintiff of destroying digital evidence and illegally downloading thousands of movies, including pornography. Zweizig Decl. Ex. 7 at 13-16, ECF 118-7. The website also contained negative statements about Plaintiff's fiancé and attorneys. Zweizig Decl. ¶ 8. Defendant characterized the website content as a topic of public interest:

> The Sitting Duck Portland blog is about 90 Chapters in length, roughly 90,000 words and remains the basic outline of a book and screen play written by Rote on the arbitration, the interaction between Zweizig's attorney and the arbitrator, the brazen request by counsel for the arbitrator to seek the opinion of a Senior U.S. Federal Judge, tainted evidence, influence, corruption, and criminal behavior.

Def.'s Mot. 16, ECF 115.

By the end of 2015, a Google search of Plaintiff's name resulted in a prominent display of the Sitting Duck Website. *Id.* at ¶10-11; Zweizig Decl. Ex. 9-10, ECF 118-9, 10. Defendant publicized his websites through his LinkedIn.com profile, which reaches over 500 of his contacts. Zweizig Decl. Ex. 14-16, ECF 118-24, 26.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

///

**DISCUSSION**

I.   **Evidentiary Objections**

Plaintiff raises numerous objections to statements in Defendant's Motion for Summary Judgment and Defendant's Response to Plaintiff's Motion for Summary Judgment. Plaintiff also objects to several exhibits that Defendant attaches to his briefs.

As to statements made by Defendant in his briefs, such statements are not evidence and, therefore, they are insufficient to raise a genuine issue of material fact:

> [A party] may not rest upon the mere allegations or denials of the . . . party's pleadings, but the . . . party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. . . . Only admissible evidence may be considered in deciding a motion for summary judgment.

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987–88 (9th Cir. 2006) (internal quotation and citations omitted); *see also British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("legal memoranda . . . are not evidence"). As to the exhibits in question, the Court did not rely on any of them in reaching its conclusion. Therefore, the Court declines to rule on Plaintiff's evidentiary objections.

II.  **Plaintiff's Claim Pursuant to O.R.S. 659A.030(1)(f)**

Oregon law makes it an unlawful employment practice "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so." O.R.S. 659A.030(1)(f) . To establish a *prima facie* case of retaliation under § 659A.030(1)(f), a plaintiff must show:

> (1) he engaged in protected activity;
>
> (2) the defendant subjected the plaintiff to any adverse treatment, in or out of the workplace, that is reasonably likely to deter protected activity, regardless of whether it materially affects the terms, conditions, or privileges of employment; and

(3) there is a causal connection between the protected activity and the adverse treatment. *Ekeya v. Shriners Hosp. for Children, Portland*, No. 3:17-CV-195-SI, 2017 WL 2929373, at *7 n.7 (D. Or. July 10, 2017) (citing Or. Admin. R. (O.A.R.) 839–005–0125 and noting that administrative rules "are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute"); *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003)). If the plaintiff establishes these three elements, the burden shifts to the defendant to articulate its legitimate reasons for the adverse employment action. *Id.* If the defendant makes that articulation, the plaintiff then has the burden of showing that the defendant's stated reasons are mere "pretext for a discriminatory motive." *Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1086 (D. Or. 2015); *Snead v. Metro. Prop. & Cas. Ins. Co.,* 237 F.3d 1080, 1090–94 (9th Cir. 2001) (holding that even though Oregon courts do not follow the burden-shifting approach, the Oregon rule is not outcome-determinative, so the burden-shifting framework is appropriate in the Ninth Circuit). The substantive analysis for retaliation under O.R.S. 659A.030 and Title VII is substantially similar and, thus, the analysis in Title VII may be instructive in resolving this case. *Id.*; *Harris v. Pameco Corp.*, 170 Or. App. 164, 178-79 (2000)( "A plaintiff seeking to establish a *prima facie* case of retaliation under ORS 659A.030(1)(f) must establish the same elements as are required under Title VII.").

In this case, the parties do not offer any arguments regarding the second and third steps in the burden-shifting analysis (Defendant's legitimate reason and Plaintiff's allegation of pretext). Instead, the parties focus on Plaintiff's *prima facie* case. Because the Court determines that there are genuine issues of material fact in dispute regarding Plaintiff's *prima facie* case, it denies both motions for summary judgment.

A. Protected Activity

Plaintiff contends that Defendant retaliated against him for engaging in three protected activities: (1) opposing the unlawful practice of whistleblower retaliation by bringing claims in court and arbitration; (2) testifying and assisting in the whistleblower retaliation proceeding; and (3) filing a complaint against Defendant and his companies in order to enforce his whistleblower judgment in 2014.

A person engages in protected activity by:

(A) Explicitly or implicitly opposing an unlawful practice or what that other person reasonably believed to be an unlawful practice, or

(B) Filing a charge, testifying, or assisting in an investigation, proceeding, or lawsuit under ORS Chapter 659A, or attempting to do so[.]

O.A.R. 839-005-0125.

The Court concludes that Plaintiff opposed, through the filing of a lawsuit and the participation in arbitration, what Plaintiff reasonably believed to be Defendant's unlawful retaliation against Plaintiff for being a whistleblower. *See* Zweizig Decl. Ex. 2, ECF 118-2 (Plaintiff's 2004 complaint against Defendant in New Jersey state court); Ex. 3, ECF 118-3 (2011 decision in arbitration based on 2004 complaint). Defendant does not dispute that Plaintiff filed a lawsuit and participated in the related arbitration. Instead, Defendant argues that Plaintiff's conduct is not protected because his testimony in the underlying arbitration was false.[5]

---

[5] Defendant also moves for summary judgment, in part, based on his contention that the Employment Agreement entered into by the parties in 2001 requires Plaintiff to arbitrate this dispute. Rote Decl. Ex. A, ECF 116-1. The Court already considered and rejected this argument in a prior Opinion & Order. *See* O&O at 4-7, ECF 96.

8 - OPINION & ORDER

The Court finds no support for this argument in the statute or its accompanying administrative rule.[6] Thus, Plaintiff establishes that he engaged in protected activity.

    B. <u>Adverse treatment</u>

Plaintiff must show that he was subjected to "adverse treatment, in or out of the workplace, that is reasonably likely to deter protected activity, regardless of whether it materially affects the terms, conditions, or privileges of employment." O.A.R. 839–005–0125. "[T]he employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006); *see also Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1030, 1062 (D. Or. 2012) (applying this standard to an O.R.S. 659A.030(1)(f) claim). Examples of adverse employment actions are "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000).

Plaintiff contends that Defendant's blog entries constitute adverse treatment. According to Plaintiff, Defendant's blog statements would dissuade a reasonable worker from asserting a claim against an employer because the statements are public and available to anyone who searches for Plaintiff's name on the internet. Plaintiff submits printouts of Google searches of his name in October and November of 2015 that demonstrate that the Sitting Duck website appeared prominently in such a public search. *See* Zweizig Decl. Exs. 10, 11, ECF 118-10, 11. Plaintiff analogizes the impact of this website to that of a negative job reference given by an employer. According to Plaintiff, any future employer would be able to easily find negative information

---

[6] In addition, in 2012, Judge Brown confirmed the arbitration award, which included the arbitrator's credibility determinations and findings of fact. *See Nw. Direct Teleservices, Inc. v. Max Zweizig*, No. 3:11-cv-00910-PK, ECF 46. This Court will not relitigate the merits of the arbitration proceeding.

9 - OPINION & ORDER

about Plaintiff, and such information could dissuade a prospective employer from hiring Plaintiff.

Courts have found that the dissemination of a negative employment reference may constitute an adverse employment action. *See, e.g.*, *Hashimoto v. Dalton,* 118 F.3d 671, 676 (9th Cir. 1997) (retaliatory dissemination of a negative reference was an adverse employment action even though the defendant proved that the poor job reference did not affect the prospective employer's decision not to hire the plaintiff); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 179 (2d Cir. 2005) (holding that a jury could find the defendant's false statement about the plaintiff to another employer may have negatively affected the plaintiff's ability to secure employment). On the other hand, badmouthing an employee outside the job reference context does not constitute an adverse employment action. *Brooks*, 229 F.3d at 928–29. Because there is no bright-line rule as to when a negative job reference amounts to an adverse employment action, "courts must pore over each case to determine whether the challenged employment action reaches the level of adverse." *Jute*, 420 F.3d at 178.

Therefore, the issue in this case is whether Defendant's website is analogous to a negative job reference that amounts to an adverse employment action. On the one hand, the website is available to the public and it is reasonable to assume that any prospective employer may conduct an internet search of a job applicant before making a job offer. Thus, an employer may be dissuaded from hiring Plaintiff because of the information on the Sitting Duck Website, just as an employer may be affected by a negative job reference. On the other hand, placing such information on a website is different than directly telling information to a prospective employer that would make it hesitate to hire an applicant. In addition, to the extent the blog disparages Plaintiff's technical skills or work performance, it has been over 13 years since Plaintiff worked

for Defendant. The Court questions the weight a future employer would give to this blog. The questionable weight is relevant to whether a reasonable employee would be dissuaded from engaging in a protected activity because of the prospect of such a blog. The Court also notes that it is unknown how many people have viewed the blog.

Defendant argues that Plaintiff's claim fails as a matter of law because he fails to identify any prospective employer who was influenced by the articles on the website, nor does Plaintiff assert that he has applied for other jobs. However, the Ninth Circuit rejected such a "no harm, no foul" argument in in *Hashimoto.* 118 F.3d at 675-76. In *Hashimoto,* the Court explained that whether the negative reference turned out to be consequential goes to the question of damages, not liability. *Id.* at 676.

Defendant also attempts to distinguish this case from *Jute*, by arguing that he did not make any false statements in his blog. Without opining on the truth of the blog statements, the Court concludes that Plaintiff has submitted sufficient evidence of negative statements that a reasonable jury could conclude that the statements on the website constituted an adverse employment action.

Defendant also devotes part of his briefs to asserting a First Amendment defense to a defamation claim, based on his alleged role as a member of the media. *See, e.g.*, Def.'s Resp. to Mot. Summ. J. 21-24, ECF 119. Because Plaintiff does not bring a defamation claim, there is no need for the Court to address Defendant's argument.

Finally, Defendant argues that he is not Plaintiff's former employer and that his "unilateral blogging was not in any way at the direction" of NDT. Defendant's argument is unavailing. First, Defendant offers no evidence in support of this assertion. Even if he did, the Court does not need to resolve whether Defendant, as CEO of NDT, was Plaintiff's employer.

O.R.S. 659A.030(1)(f) does not require the offending actor to be an "employer," in contrast to O.R.S. 659A.030(1)(a)-(b). Instead, the statute refers only to the actions of a "person." *See* O.R.S. 659A.030(1)(f). Chapter 659A defines a "person" as "one or more individuals," among other definitions, without any requirement that the "person" be an employer.[7] *See Baker v. Maricle Indus., Inc.*, No. 6:16-CV-01793-AA, 2017 WL 1043282, at *6 (D. Or. Mar. 17, 2017) (examining legislative history and predicting that the Oregon Supreme Court would hold that O.R.S. 659A.030(1)(f) "applies to individual employees just as it applies to employers").

In sum, the Court concludes that neither party prevails as a matter of law on the issue of whether Defendant's website constitutes an adverse employment action. Therefore, the jury must resolve this question.

### C. Causation

The last component of Plaintiff's *prima facie* case is "a causal link between the protected activity and the adverse employment action." *Huffman v. Scappoose Sch. Dist. No. 1 J*, No. 3:14-CV-00941-MO, 2015 WL 4546084, at *6 (D. Or. July 28, 2015). "Without causation, the remaining two elements do not constitute an actionable offense." *Id.* To show causation, a plaintiff must show that he would have been treated differently in the absence of the unlawful motive. *Harper v. Mt. Hood Cmty. Coll.*, 283 Or. App. 207, 214, 388 P.3d 1170, 1174 (2016). "In employment retaliation cases like this one, causation may be inferred from the circumstantial evidence of (1) an employer's knowledge that the plaintiff engaged in protected activity, and (2)

---

[7] "Before the legislature amended Or. Rev. Stat. § 659A.030(1)(f) to hold 'any person' liable for retaliation, the statute only permitted plaintiff to hold 'employer[s], labor organization[s], [and] employment agenc[ies]' liable." 2001 Or. Laws Ch. 621 (2001); *Baker v. Maricle Indus., Inc.*, No. 6:16-CV-01793-AA, 2017 WL 1043282, at *5 (D. Or. Mar. 17, 2017). The Oregon Bureau of Labor and Industries amended O.A.R. 839-005-0125 in 2015 to replace the word "employer," which was included in an earlier version of the administrative rule, with "person," in order to be consistent with the statute and make clear that it is not necessary for an individual in violation of O.R.S. 659A(1)(f) to be an employer.

the time interval separating the protected activity and allegedly adverse action." *Huffman*, 2015 WL 4546084 at *6 (citing *Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987)).

Plaintiff contends that Defendant created his website and has continued to write his blog because Plaintiff filed his whistleblower retaliation lawsuit and participated in the arbitration. Defendant essentially admits as much in Chapter 6 of his blog, "So Why am I Blogging?":

> Now that [Plaintiff and his attorney] have . . . alleged that we have been engaged in fraud, we might as well bring the history of their bad behavior to the world so that everyone can learn from it an[d] perhaps there will be a ground swell enough to make some changes here[.]

Zweizig Decl. Ex. 6 at 1, ECF 118-6.

Defendant, on the other hand, states that "the blog was written to address the risks of arbitration, to showcase the bias and lack of independence of the arbitrator, to defend his own reputation and to monetize the intellectual property [Defendant] has created and will create." Def.'s Mot. Summ J. at 32, ECF 115. As with other assertions made in Defendant's briefs, he offers no evidence to support this statement.

The Court concludes that Plaintiff establishes the element of causation. Defendant's websites were created in direct response to Plaintiff's lawsuit and the subsequent arbitration. The Court does not need to infer causation because even Defendant concedes that he was motivated by the arbitration proceeding and wished to highlight certain flaws he observed.

D. Other Arguments

Defendant puts forth a number of additional arguments that the Court can dispose of briefly.

Defendant contends that Plaintiff's claims are not ripe because they are "based entirely on speculation about the potential for an adverse employment action in the future." Def.'s Mot. Summ. J. 23, ECF 115. As discussed above, Plaintiff's claims are based on the content of the

blog, which has already been written and published. Plaintiff does not need to show at this point that the blog led to an inability to get a subsequent job.

Defendant argues that Plaintiff lacks standing because he has not suffered a concrete, actual, or imminent injury. *Id.* Plaintiff alleges an injury based on the blog publication. Thus, Defendant's argument is unavailing.

Defendant argues that Plaintiff's claims are moot because he has removed and redacted Plaintiff's name from indexable material on the blog. However, Defendant himself concedes that there may still be an "internet presence" associated with the material Defendant published in the blog. *Id.* at 25.

E. Conclusion

In sum, the Court denies summary judgment to both parties. A reasonable jury could conclude that Plaintiff was subjected to an adverse employment action. On the other hand, a reasonable jury could conclude just the opposite. The parties will "have their day in court to determine which party should prevail." *Enlow v. Salem-Keizer Yellow Cab Co.*, 389 F.3d 802, 809 (9th Cir. 2004)

**III. Aiding and Abetting—O.R.S. 659A.030(1)(g)**

Plaintiff alleges that Defendant, in his individual capacity, aided and abetted NDT and the other corporate defendants in this case "to subject Plaintiff to harm and adverse employment actions because of Plaintiff's protected employment activities." Compl. ¶ 53. Defendant responds that there can be no aiding and abetting because NDT has not been an active company since 2014 and there are no employees of any of the other corporate defendants. Defendant makes these assertions in his Response to Plaintiff's Motion for Summary Judgment and submits no evidence to corroborate his statements.

In Oregon, it is unlawful "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter[.]" Or. Rev. Stat. § 659A.030(1)(g). A recent opinion from this District provides a useful explanation regarding when agents with executive authority can be held liable for aiding and abetting a corporation in retaliation. *See Baker*, 2017 WL 1043282, at *3. When an agent with executive authority acts outside his scope of employment, he acts in his personal capacity, not as an agent of the corporation, and is, therefore, a third party to the plaintiff's relationship to the corporation. *Id.* at *4. Under those conditions, the individual could be liable for aiding and abetting the corporation under O.R.S. 659A.030(1)(g). *Id.* On the other hand, where the agent exercises executive authority, he would not be liable to aiding and abetting the corporation, because a person cannot aid and abet himself. *Id.* at *3; *Gaither v. John Q. Hammons Hotels Mgmt., LLC*, 2009 WL 9520797, *4 (D. Or. Sept. 3, 2009) ("[A]lleging ... liability as a primary actor" raises the concern that a defendant could be held liable for aiding and abetting himself.). *See also White v. Amedisys Holding, LLC*, 2012 WL 7037317, *4 (D. Or. Dec. 18, 2012) (explaining that courts treat agents acting with executive authority differently because they act directly on behalf of the corporate employer, whereas supervisory managers do not). "Normally, whether a party has acted within the scope of employment is a question of fact, albeit an ultimate fact." *McGanty v. Staudenraus*, 321 Or. 532, 539 n.3, 901 P.2d 841, 846 (1995).

Here, Defendant was the CEO of NDT. *See* Rote Decl. Ex. F at 5, ECF 116-6. The question, therefore, is whether he wrote the blog in his personal capacity or within his role as CEO. The License Agreement between Northwest Direct Marketing, Inc.; NDT; Northwest Direct Marketing of OR, Inc.; and Defendant grants a license to Defendant to use certain

information "in the course of [Defendant's] business and for [his] own internal business purposes." *Id.* at 1. The Agreement contains another clause that distances Defendant from NDT:

> **Independent Business Relationship.** Licensor and Licensee are independent entities and are not and shall not be construed as joint venturers, partners, employer/employee, or agents of the other.

*Id.* at 4. Such language supports the conclusion that Defendant acted in his personal capacity, not as an agent of NDT, when he wrote the blog entries. Therefore, a reasonable jury may conclude as much. On the other hand, Defendant may be able to show that he was acting in his professional capacity as CEO of NDT. Thus, the Court will allow the jury to answer this question at trial.

## CONCLUSION

The Court denies Plaintiff's Motion for Summary Judgment [117] and Defendant's Motion for Summary Judgment [115]. The Court will set forth a trial schedule in this case during the scheduling conference set for September 11, 2017 in the related case, *Zweizig v. Rote et al.*, 3:14-cv-00406. The conference call information has already been provided to the parties in that case. The parties are directed to submit a jointly proposed schedule to the courtroom deputy no later than noon the day before the hearing.

IT IS SO ORDERED.

Dated this ___29___ day of ___August___, 2017.

_____
MARCO A. HERNÁNDEZ
United States District Judge