Joel Christiansen, OSB #080561
Vogele & Christiansen
812 NW 17th Avenue
Portland, OR 97209
(503) 841-6722
joel@oremploymentlawyer.com

      Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MAX ZWEIZIG, | Case No.: 3:15-cv- 02401-HZ |
| Plaintiff, | **PLAINTIFF'S TRIAL MEMORANDUM** |
| v. | |
| TIMOTHY C. ROTE, a citizen of the state of Oregon, NORTHWEST DIRECT TELESERVICES, INC., an Oregon for-profit corporation, NORTHWEST DIRECT MARKETING OF OREGON, INC., an Oregon for-profit corporation, NORTHWEST DIRECT MARKETING, INC., an Oregon for-profit corporation, NORTHWEST DIRECT OF IOWA,INC., an Iowa for-profit corporation, ROTE ENTERPRISES, LLC, an Oregon limited liability company, NORTHWEST DIRECT MARKETING, INC., aka Northwest Direct Marketing (Delaware), Inc., a Delaware Corporation, and DOES 1 through 5, | |
| Defendants. | |

Page 1 - PLAINTIFF'S TRIAL MEMORANDUM

**TRIAL MEMORANDUM**

In this case, set for a jury trial beginning on January 16, 2018, Plaintiff Max Zweizig ("Zweizig") alleges that defendants unlawfully retaliated against Zweizig in violation of O.R.S. § 659A.030(1)(f) by publishing written materials in a public manner on the internet accusing Zweizig of being a criminal, being unfit to perform his job, and being an immoral and unethical employee during his former employment with defendants. Defendants published and continue to publish these materials because Zweizig engaged in protected activities -- opposing defendant's earlier unlawful employment practices by litigating and winning a whistleblower retaliation lawsuit. Additionally, Zweizig alleges that Defendant Timothy Rote ("Rote") violated O.R.S. § 659A.030(1)(g) by aiding, abetting, inciting, and coercing the publications and is therefore personally liable to Zweizig.

Zweizig seeks noneconomic damages of $150,000 for the emotional distress of nearly three years of disparaging publications about Zweizig made in public on the internet and punitive damages of $1,000,000 for defendants' willful and malicious conduct.

The testimony and evidence presented at trial will establish the following:

## I.      Facts

Zweizig worked for Defendant Northwest Direct Teleservices, Inc. ("NDT") from September 1, 2001 to November 15, 2003 as Director of Information Technology. NDT was incorporated in Oregon from 1998 until 2015 and maintained its principal place of business in West Linn, Oregon. Zweizig worked remotely for NDT from New Jersey. Zweizig and NDT's employment contract specified that Oregon law would govern the interpretation and construction of Zweizig's employment agreement.

/ / / /

### 1.    Zweizig & NDT's Arbitration and Related Litigation

After NDT terminated Zweizig's employment, Zweizig commenced a lawsuit against

NDT's owner, president, and executive (Rote), NDT, and Doe defendants on or about March 18,

2004 in the Superior Court of New Jersey, Gloucester County Law Division, Docket Number

GLO-L-000473-04. In his lawsuit, Zweizig alleged that the defendants had taken adverse

employment-related actions against Zweizig because of his protected reports to law enforcement

agencies.

Following a series of procedural motions, Zweizig's lawsuit was transferred to private

arbitration in Oregon before the Arbitration Service of Portland ("ASP"). The arbitration

proceeding, captioned *Northwest Direct Teleservices, Inc. v. Max Zweizig*, ASP Case No. 050511-1,

involved a number of claims between Zweizig and NDT. NDT had commenced the arbitration

against Zweizig after Zweizig filed his lawsuit in New Jersey but before Zweizig's claims were

transferred from New Jersey. Therefore NDT was captioned as the claimant in the arbitration.

Zweizig's counterclaims against NDT were the same as Zweizig had asserted in his original lawsuit

- that NDT had taken adverse employment-related actions against Zweizig because of his protected

reports to law enforcement agencies. During the course of the arbitration, the arbitrator entered an

order designating all electronically stored information produced during the arbitration as

"confidential" and not for use outside the arbitration.

Arbitration continued for several years until March 31, 2011, when arbitrator William Crow

issued an Opinion and Order after extensive discovery and several days of hearings on all parties'

claims. The arbitrator denied all of NDT's substantive claims against Zweizig[1]. The arbitrator ruled

---

[1] In a procedural ruling unrelated to NDT's substantive allegations against Zweizig, the arbitrator
ordered Zweizig to pay $4,316.94 in court courting fees related to the arbitration.

in Zweizig's favor on his whistleblower retaliation claim against NDT. Specifically, the arbitrator

ruled that "the catalyst for [Zweizig's] termination at the time it took place was in retaliation for the

action [Zweizig] took over [Zweizig's] belief that there might have been efforts at overbilling some

clients" and issued judgment in Zweizig's favor in the amount of $75,375.00 for lost wages and

other damages related to NDT's adverse employment-related actions.

On July 15, 2011, NDT, through Rote, filed a petition to vacate the arbitration award in

Clackamas County Circuit Court, *Northwest Direct Teleservices, Inc. v. Max Zweizig*, Case No.

CV1107044. In its motion, NDT argued that Zweizig had procured the arbitration award:

> "by (a) corruption, fraud or other undue means, (b) there was evident partiality by the
> arbitrator, (c) the arbitrator refused to postpone the hearing upon showing of sufficient cause
> for postponement, refused to consider evidence material to the controversy or otherwise
> conducted the hearing contrary to ORS 36.665 so as to prejudice substantially the rights of a
> party to the arbitration proceeding, and (d) the arbitrator exceeded the arbitrator's powers.

On August 1, 2011, Zweizig removed NDT's petition to the United States District Court for

the District of Oregon. *Northwest Direct Teleservices, Inc. v. Max Zweizig,* Case No.

3:11-cv-00910-PK (ECF 1-1). On August 15 and 16, 2011, NDT filed a Declaration of Timothy C.

Rote and 2,037 pages of arbitration materials in support of NDT's motion to vacate. Zweizig

opposed NDT's motion and filed his own motion to vacate in part and confirm in part the arbitration

award[2]. On February 14, 2012, the Court issued an order denying both parties' motions to vacate the

arbitration award and granting Zweizig's motion to confirm the award. The same day, the Court

entered a judgment confirming the arbitration award and dismissed the case. Zweizig registered the

judgment in Clackamas County Circuit Court on May 24, 2012.

---

[2] Zweizig sought to vacate the underlying arbitration award to the extent it declined to award
attorney fees to Zweizig.

2.    **Zweizig v. Rote - Fraudulent Transfer Action**

On March 11, 2014, Zweizig commenced a new lawsuit against Timothy C. Rote, NDT, and several related corporate entities owned and operated by Rote. *Max Zweizig v. Timothy C. Rote et al.*, Case No. 3:14-cv-00910-JS. The lawsuit alleges that the defendants engaged in unlawful conduct to prevent Zweizig from enforcing his judgment against NDT. That matter is still pending before this Court.

3.    **The Sitting Duck Portland Website**

Beginning on or about February 27, 2015, Rote began publishing a publicly-accessible website titled Sitting Duck Portland ("Sitting Duck Portland"). Rote has readily admitted throughout this case that he is the author and owner of all content published on the Sitting Duck Portland website and that all materials have been published pursuant to a licensing agreement with NDT, which Rote signed in both his individual capacity and in his capacity as the president and chief executive of NDT.

The Sitting Duck Portland website was accessible to the general public at https://sittingduckportland.wordpress.com from February 2015 through approximately November 2016[3]. According to Rote's initial article on the Sitting Duck Portland website dated February 27, 2015,

> "This Sittingduckportland story is about an arbitration involving one of my companies and a
> former IT manager by the name of **Max Zweizig** (emphasis in original). Max was
> terminated for a variety of job performance reasons. His fiancée practiced as an attorney for
> a time and during his employment with us they lived together in a small town in New Jersey.
> A year or so before Max's false complaint, he was caught conspiring with another employee

---

[3] As discussed below, Rote deleted the Sitting Duck Portland during the pendency of this litigation and republished a similar website titled "The Explosion of Fake Whistleblowing" at https://thefirstdutyportland.wordpress.com.

of ours in a plan to set up a company competing with my company. That of course was a violation of our non-compete agreement."

The end of this and all Sitting Duck Portland articles contained a list of "tags" - hyperlinked descriptions of each article's subject matter. Rote's article, as well as many other articles, contained tags for "Max Zweizig" and "Sandra Ware." Ms. Ware is Zweizig's fiancée.

For the six months after his initial February 27, 2015 article, Rote did not publish any new articles on the Sitting Duck Portland website. Then, beginning in August 2015, Rote began publishing extensively. On August 23 and 24, 2015, Rote posted two articles about judicial corruption, both suggesting that William Crow's actions in NDT's arbitration with Zweizig constituted judicial corruption.

On September 29, 2015, Rote began systematically disparaging Zweizig on the Sitting Duck Portland website[4]. Rote posted an article titled "Chapter 4 - The Forensic Reports." In that article, Rote began by writing:

> "In the next 48 hours we will provide summaries of the forensic reports [from the arbitration] and attach them for your perusal. You'll be surprised by this. There's some nasty movies downloaded here on our business computer and the forensic experts place the timing of this over a multi-year period while the computer with Zweizig."

Rote went on to publicly accuse Zweizig of destroying digital evidence in the arbitration proceeding. Rote also accused Zweizig of illegally downloading "thousands of movies, including titles indicating that the movies were porn." Rote accused Zweizig of a "trademark and copyright violation bonanza" and alleged that the FBI, the New Jersey State Police, and the community were all notified. Rote suggested that Ms. Ware, a non-practicing attorney, had advised Zweizig to

---

[4] Rote routinely edited and changed the articles on the Sitting Duck Portland website.

destroy evidence -- "Sandra, Max would not have destroyed his personal computers had he not been advised to do so."

By not later than October 5, 2015, the Sitting Duck Portland website had become the first result in Google search results for Zweizig's name. Therefore, the first thing any person Googling "Max Zweizig" on or after October 5, 2015 would have found was Rote's articles accusing Zweizig of data destruction, employment-related misconduct, and illegal activity, including trademark and copyright violations, and downloading pornography. Zweizig began fearing that his employer, friends, family, and acquaintances would discover Rote's writings. Zweizig began omitting his full name from emails, letters, and other correspondence. Zweizig began to fear that Rote would continue to stalk and harass him on the internet because Zweizig brought, won, and had persisted with employment-related legal claims against Rote's companies.

Rote continued his disparaging publications about Zweizig. On October 5, 2015, Rote published an article titled "Chapter 5 - Our History with Max Zweizig". Rote accused Zweizig of being "not well educated" and "not able to script" (Zweizig's is an IT professional and "scripting" is his job). Rote went on to say that Zweizig "does not look like a person you can bring to a sales meeting" and that he "ascribes to a different time and identifies with the long hair rock star persona." Rote's article accused Zweizig of setting up a competing company while still employed with NDT. It accused Zweizig of sabotaging NDT's business by "controlling our data" and forcing NDT to "shutdown [sic] for a week." Rote published that Zweizig had "breached his contract" with NDT, made false criminal reports concerning NDT, and had improperly "sought whistle blower type protection to save his job."

The motivation for Rote's publications was clear. In an article titled "Chapter 6 - So Why am I Blogging?" published on October 6, 2015, Rote clarified that "now that they … have alleged that we have been engaged in fraud, we might as well bring the history of their bad behavior to the world so that everyone can learn from it an [sic] perhaps there will be a ground swell enough to make some changes here...who knows." Rote explained that "we need to monetize our experience as much as possible to pay for the defense of this baseless suit."

Rote's publications have continued throughout this litigation. While some of Rote's writings have focused more generally about judicial corruption, even those writings have implicated Zweizig. For example, in an article titled "Chapter 41 - Our Time in New Jersey with Judge Kugler", Rote questioned whether "Max was setting up private websites for these Judges to watch their porn. How that would have worked is that a private website would be set up, for the exclusive use only, content provided by the hosting person, and the only thing the Judge would need to do is access the site with his login Id and password."

Rote has repeatedly modified, uploaded, and removed various attachments, allegations, and other materials on the site. While Rote has, at times, selectively, changed Zweizig's name to "M", "MZ", or other acronyms, both the incomplete nature of Rote's changes and the substance of Rote's publications make it clear that his websites are referring to Zweizig.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

Rote has also published harassing comments directed at Zweizig's fiancé and Zweizig's attorneys. For example, in an article "Chapter 7 - The 120 Gig Hard Drive" that Rote published on October 7, 2015, he wrote:

> And of course there were titles indicating there was porn. Lots of titles, but here's one:
>
> Gay_Older_Men_-_Quadraplex_Part_1.avi.lnk          04/01/03          04/01/03
>                                                     07:29:49AM        07:28:46AM
>
> Sandra Ware, I thought you were engaged to Max.

Sometime in November 2016, Rote deleted the Sitting Duck Portland website and moved the bulk of its content to a new site titled The Explosion of Fake Whistleblowing ("Fake Whistleblowing") that is currently publicly accessible at https://thefirstdutyportland.wordpress.com.

In addition to Rote's website publications, Rote has consistently represented that he is in the process of turning his writings about NDT's arbitration with Zweizig into a book and screenplay. As recently as April 2017, Zweizig received an email from a former co-worker at NDT that reads in pertinent part as follows:

> "Have you been hearing from Tim at all? He called me at work about a month ago. He went on and on about how there was a complete shutdown of the company after you [Zweizig] left. He claims I lied during the questioning at that arbitration. Then says some dude had to fly out of Chicago to save the company. It gets even crazier. He says he is writing a play about the whole situation and wants to meet with me. I do not remember a shutdown at all."

As of the filing of this motion, Rote has published a total of 89 published articles on the Fake Whistleblowing website, many of which were previously published on the Sitting Duck Portland website. Rote's articles and the materials they reference continue to disparage Zweizig,

Zweizig's fiancée, and Zweizig's attorneys. Moreover Rote has publicized his websites via his LinkedIn.com profile, which reaches over 500 of Rote's contacts.

### 4.    Rote's History of Intimidating, Inappropriate, and Oppressive Conduct

At trial, Zweizig intends to present evidence that Rote's history of intimidation and untoward conduct has given and continues to give Zweizig cause for concern about himself and anyone who associates with Zweizig. Specifically, to explain his concerns, Zweizig will testify and present evidence demonstrating that Mr. Rote has a history of suspicious and unusual contact with judicial officials, including Hon. Robert Kugler in New Jersey, Hon. Robert Jones in Oregon, and the arbitrator in the underlying case between Zweizig and NDT, William Crow. Zweizig will also offer and explain a suspicious email he previously received from Rote's family member, Greg Rote. Greg Rote's email informed Zweizig that Rote had apparently tried to induce Greg Rote to "fly to New Jersey and send [Zweizig] a message" and "commit a criminal act." Moreover, Zweizig will offer evidence of a lawsuit Rote filed against Zweizig's attorneys (and the Oregon State Bar) shortly after this lawsuit was commenced.

In the context of the current case, Rote's history offers an explanation for why Zweizig lives in constant fear of being stalked on the internet by Rote. As a result, Zweizig will explain how he has been forced to minimize his online presence and take other precautionary steps to maintain his privacy and distance from Rote. After years of public harassment from Rote, Zweizig seeks court intervention to establish proper boundaries and privacy, to compensate Zweizig for having

### 5.    Zweizig's Damages

Zweizig seeks compensatory and punitive damages. Zweizig will testify that for over two years, he has experienced persistent, significant, and reasonable emotional distress related to Rote's ongoing publications. Zweizig will describe the strain Rote has placed on Zweizig's relationships,

his fear to form or pursue a meaningful online presence for fear of further stalking from Rote, and the efforts Zweizig has been forced to undertake to minimize harm from Rote's actions, including his best efforts to ignore Rote. Zweizig will testify that he has felt stalked by Rote and that he reasonably believes Rote will continue with his disparaging conduct. Zweizig will explain how. Rote's publications, combined with Rote's history of obsessive and inappropriate behavior, have caused Zweizig ongoing concern for his privacy and peace as well as the privacy and peace of anyone with whom Zweizig associates.

In support of his claim for punitive damages, Zweizig will testify that Rote's acts have been willful and malicious. Mr. Zweizig will cite the intentionally provocative content of Rote's publications, including Rote's personal attacks on Zweizig, his financée, and his attorneys. Zweizig will further explain the context of Mr. Rote's ongoing publications as part of a broader effort to intimidate Mr. Zweizig into submission.

**6.    Corporate Defendants Are in Default and Their Responsive Pleadings Have Been Stricken**

With the exception of Rote, all defendants in this case are in default and their responsive pleadings have been stricken from the record.

**II.    Legal Claims**

**1.    Retaliation - O.R.S. § 659A.030(1)(f)**

Oregon law makes it an unlawful employment practice "[f]or any person to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so." O.R.S. 659A.030(1)(f) . To establish a prima facie case of retaliation under § 659A.030(1)(f), a plaintiff must show:

**Element 1:** He engaged in protected activity;

Page 11 - PLAINTIFF'S TRIAL MEMORANDUM

**Element 2:** The defendant subjected the plaintiff to any adverse treatment, in or out of the workplace, that is reasonably likely to deter protected activity, regardless of whether it materially affects the terms, conditions, or privileges of employment; and

**Element 3:** There is a causal connection between the protected activity and the adverse treatment.

Ekeya v. Shriners Hosp. for Children, Portland, No. 3:17-CV-195-SI, 2017 WL 2929373, at *7 n. 7 (D. Or. July 10, 2017).

Regarding the first protected activity element, a person engages in protected activity by: (A) Explicitly or implicitly opposing an unlawful practice or what that other person reasonably believed to be an unlawful practice, or (B) Filing a charge, testifying, or assisting in an investigation, proceeding, or lawsuit under ORS Chapter 659A, or attempting to do so[.] O.A.R. 839-005-0125. In this case, the Court has ruled that Zweizig engaged in protected activity. See, Opinion & Order, ECF 133, pages 8-9.

Regarding the third causation element, the Oregon Supreme Court has established the "substantial factor" standard. See, Holien v. Sears, Roebuck and Co., 298 Or. 76, 90 n. 5 (1984). The Oregon Court of Appeals has described this standard as a "but for" test. Hardie v. Legacy Health Sys., 167 Or. App. 425, 435 (2000) (plaintiff must show that he would not have been subjected to the adverse treatment but for the unlawful discriminatory motive of the employer). See also, Estes v. Lewis and Clark College, 152 Or. App. 372, 381 rev. denied, 327 Or. 583 (1998) (employer's wrongful purpose must be "a factor that made a difference"). The court has also ruled that Zweizig has established causation. See, Opinion & Order, ECF 133, page 13.

Page 12 - PLAINTIFF'S TRIAL MEMORANDUM

Thus, the sole liability issue in this case is whether defendants subjected Zweizig to an adverse employment action.  To prove an adverse employment action, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006); see also Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ., 927 F. Supp. 2d 1030, 1062 (D. Or. 2012) (applying this standard to an O.R.S. 659A.030(1)(f) claim). Examples of adverse employment actions are "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

Courts have found that the dissemination of a negative employment reference may constitute an adverse employment action. See, e.g., Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir. 1997) (retaliatory dissemination of a negative reference was an adverse employment action even though the defendant proved that the poor job reference did not affect the prospective employer's decision not to hire the plaintiff); Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 179 (2d Cir. 2005) (holding that a jury could find the defendant's false statement about the plaintiff to another employer may have negatively affected the plaintiff's ability to secure employment). On the other hand, bad-mouthing an employee outside the job reference context does not constitute an adverse employment action. Brooks, 229 F.3d at 928–29.

At trial, Zweizig will establish that defendants' publications on the internet, search engine optimized for Zweizig's unique name, are tantamount to an employer taking out a billboard on the side of the road that reads, "Zweizig was a terrible employee, a criminal, a liar, a saboteur, and unfit

Page 13 - PLAINTIFF'S TRIAL MEMORANDUM

to work in his profession." Zweizig will prove by a preponderance of the evidence that defendants'

publications constitute an adverse employment action for the purposes of O.R.S. § 659A.030(1)(f).

Finally, Zweizig will be required to establish his damages. For violations of O.R.S. §

659A.030(1)(f), O.R.S. § 659A.885(1) and (3) allow Zweizig to recover a full range of damages,

including injunctive relief, compensatory damages, punitive damages, prevailing party costs, and

reasonable attorney fees. Zweizig seeks to recover $150,000 in compensatory damages through

testimony and evidence demonstrating significant and reasonable fear, emotional distress, and

inconvenience resulting from defendants' actions. Moreover, Rote's pattern and practice of

bald-faced intimidation and disrespect for the justice system will establish Zweizig's heightened

burden to present "clear and convincing evidence that [defendants] have acted with malice and

ha[ve] shown a reckless and outrageous indifference to a highly unreasonable risk of harm and

ha[ve] acted with a conscious indifference to the health, safety and welfare of others" in support of

a $1,000,000 punitive damages award. See O.R.S. § 31.730(1).

### 2.    Aiding and Abetting - O.R.S. § 659A.030(1)(g)

In Oregon, it is unlawful "[f]or any person, whether an employer or an employee, to aid,

abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter[.]" O.R.S. §

659A.030(1)(g). A recent opinion from this District provides a useful explanation regarding when

agents with executive authority can be held liable for aiding and abetting a corporation in

retaliation. See Baker, 2017 WL 1043282, at *3. When an agent with executive authority acts

outside his scope of employment, he acts in his personal capacity, not as an agent of the

corporation, and is, therefore, a third party to the plaintiff's relationship to the corporation. Id. at *4.

Page 14 - PLAINTIFF'S TRIAL MEMORANDUM

Under those conditions, the individual could be liable for aiding and abetting the corporation under O.R.S. 659A.030(1)(g). Id.

Zweizig will establish at trial that Rote was acting out of a personal grudge and outside the scope of his employment when he published over 90,000 words, the general theme of which was to paint Zweizig to the general public as a criminal who is unfit to perform his job. O.R.S. § 659A.885(1) and (3) also provide a full range of remedies for this claim and for the reasons explained above, Zweizig will seek to recover $150,000 in compensatory damages, $1,000,000 in punitive damages, as well as an injunction, costs, and attorney fees for pursuing this action.

Date: 12/6/17                                         /s/ Joel Christiansen

                                                    Joel Christiansen, OSB #080561
                                                    joel@oremploymentlawyer.com
                                                    Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing PLAINTIFF'S TRIAL MEMORANDUM on:

Timothy Rote
24790 SW Big Fir Rd.
West Linn, OR 97068
*Pro Se Defendant*

through the Court's electronic filing system on December 6, 2017.


/s/ Joel Christiansen
Joel Christiansen, OSB #080561
Attorney for Plaintiff