IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MAX ZWEIZIG,

    Plaintiff,

v.

NORTHWEST DIRECT TELESERVICES;
INC., NORTHWEST DIRECT MARKETING
OF OREGON, INC,; TIMOTHY ROTE;
NORTHWEST DIRECT MARKETING
(DELAWARE), INC.; NORTHWEST DIRECT
OF IOWA, INC.; ROTE ENTERPRISES, LLC;
and NORTHWEST DIRECT MARKETING, INC.;

    Defendants.

No. 3:15-cv-02401-HZ

OPINION & ORDER

Joel Christiansen
VOGELE & CHRISTIANSEN
812 NW 17th Avenue
Portland, OR 97209

    Attorney for Plaintiff

Timothy Rote
24790 SW Big Fir Road
West Linn, OR 97068

    Pro Se Defendant

HERNÁNDEZ, District Judge:

Plaintiff Max Zweizig brought this retaliation claim against Defendants Northwest Direct Teleservices, Inc., Northwest Direct Marketing of Oregon, Inc., Timothy Rote, Northwest Direct Marketing (Delaware), Inc., Northwest Direct of Iowa, Inc., Rote Enterprises, LLC, and Northwest Direct Marketing, Inc. Currently pending before this Court are Defendant Rote's Objection to Plaintiff's Form of Judgment and Defendant Rote's Motion to Vacate for Lack of Jurisdiction, Alter or Amend Judgment, or For a New Trial pursuant to Fed. R. Civ. P. 59 and 60.[1] The Court denies Defendant's motion for a new trial but finds that Plaintiff's noneconomic damages award should be capped pursuant to ORS 31.710.

## BACKGROUND

Plaintiff is the former IT director of Defendant Northwest Direct Teleservices, Inc. ("NDT"). Defendant Rote ("Defendant") is the former executive of Defendant NDT and the other business entities involved in this case. After their relationship deteriorated in 2003 and Plaintiff was terminated, the parties began almost 15 years of litigation culminating in this lawsuit.

Sometime after his termination, Plaintiff succeeded in arbitration on a claim for whistleblower retaliation against Defendant NDT. Defendant subsequently created a blog to

---

[1] Because judgment has not yet been entered in this case, the Court is only addressing Defendant's arguments to the extent that he requests a new trial. *See Contempo Metal Furniture Co. of California v. E. Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 764 n.1 (9th Cir. 1981) (noting that "[t]he motion for new trial was timely under Fed. R. Civ. P. 59, even though filed before entry of judgment"); 3D Wright & Miller Fed. Prac. & Procedure § 2812 (noting there is nothing in Rule 59(b) "to prevent making a motion for a new trial before judgment has been entered"). Once judgment is entered, Defendant is free to request relief from the judgment.

write about his experience in the arbitration. At times, Defendant wrote about Plaintiff. After discovering the blog, Plaintiff filed the present suit alleging that Defendant's blog was an act of retaliation. Specifically, Plaintiff contends that Defendant aided and abetted his former employer, Defendant NDT, in retaliating against him for his participation in the former arbitration where he succeeded on his whistleblower claim.

Because they were unrepresented, all the business entities in this case have defaulted. The claims against Defendant Rote, however, proceeded to a two-day jury trial on January 16 and 17, 2018. The jury returned a verdict for Plaintiff and awarded him $1,000,000 in noneconomic damages.

## STANDARDS

Under Rule 59, a district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court". Fed.R.Civ.P. 59(a)(1)(A). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). The Ninth Circuit has previously held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation omitted). "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are . . . bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (citations omitted). The authority to grant a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980).

# DISCUSSION

## I. Motion for a New Trial

Defendant makes various arguments in support of his motion for a new trial.[2] Broadly, he argues that a new trial is warranted because: (1) Plaintiff's counsel made improper statements during closing argument; (2) the evidence was insufficient to support the verdict; (3) the Court gave improper jury instructions; (4) the Court made improper evidentiary rulings; (5) Defendant received information from Juror No. 5 that suggests damages were improperly calculated; and (6) Defendant discovered new evidence.[3] For the reasons that follow, the Court declines to grant Defendant a new trial.

### A. Plaintiff's Closing Argument

Defendant argues that the Court should grant a new trial because Plaintiff's counsel made improper arguments in closing. In particular, Defendant contends that counsel's arguments that the jury should "send a message" with its damages award were inappropriate given that punitive

---

[2] Defendant also argues that the Court lacks subject matter jurisdiction over this case because Plaintiff's claims are subject to arbitration, otherwise fail to comply with the terms of Plaintiff's employment agreement, and are barred by the "statute of limitations" period set forth in the employment agreement. The Court already addressed Defendant's arguments regarding arbitration and the applicability of the terms of the employment agreement in its January 5, 2017 Opinion and Order on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction. ECF 96. For the reasons already described, the Court finds this case is not subject to the terms of the employment agreement and jurisdiction over this case is proper.

[3] Defendant also moves for a new trial on the grounds that he was "duped into a nominal 30 day discovery period" by Plaintiff's counsel and was unable to complete the discovery in the time given. The record, however, suggests that Defendant had ample time to conduct discovery. At a scheduling conference held on October 14, 2016, the parties were given almost five months to complete discovery. *See* Minutes of Proceedings, ECF 74. A two-month extension was granted on March 13, 2017. *See* Minutes of Proceedings, ECF 107. Then a few weeks prior to the end of the discovery period, Defendant filed a Motion for Extension of Discovery Deadlines, which the Court subsequently denied. Def. Mot. Extension, ECF 110; Order, ECF 112.

damages had been excised from the case. Defendant, however, did not object to any of these arguments during trial.[4]

Improper argument by counsel can be grounds for a new trial, but "generally, misconduct by trial counsel [only] results in a new trial if the flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (internal citations and quotations omitted). "The federal courts erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial." *Id*. at 1193 (internal citations omitted). "Where a party seeks a new trial based on arguments by opposing counsel that were not objected to at trial, a new trial is available only in 'extraordinary cases.'" *Aubert v. Robles*, No. 1:10-CV-00565-MJS PC, 2014 WL 2979413, at *1–2 (E.D. Cal. July 1, 2014) (citing *Hemmings*, 285 F.3d at 1193).

> During his closing argument, Plaintiff's counsel made the following statements:
>
> There's words like "mental suffering," "emotional distress," "humiliation," "inconvenience," "interference with normal and usual activities," and "injury to reputation." All of those are the case here. The words that aren't on the jury instructions, but they feed into these words are "terror," "torment." The list, it— yeah. You saw Mr. Zweizig testify. That's—that's obvious.
>
> So what do we look at? I mean, how do you—how do you put a number on that? What I'm going to encourage you to do is look at the community. What kind of message do we want to send to the world to say this—not only is this wrong, but it's real. What Mr. Zweizig has gone through, it's not just a blog on the Internet. We're not up here about a couple comments that hurt his feelings on Facebook. This is a smear campaign, being stalked on the Internet. What do we do with that fear?
>
> So when you look at community, there's a couple contexts I want to talk to you about. The first is the broad context. The community here is massive, and the problem is great. And blogging, Googling, Facebooking, Twittering, LinkedIn, that's part of our world today. And what I argue to you is you need to be

---

[4] Although Defendant Rote proceeded pro se, he was extremely sophisticated in litigating this case as the case file shows.

> responsible about how you use that stuff. And we need to send a message to that big community that that's not acceptable. You can't do that. That really hurts people.
>
> . . . .
>
> And the other context is it's the small context. It's about the individual, the family, what happens at home day to day. You know, how do we interact with ourselves? How do we interact with the people we love? What kind of messages do we want to send to our children or our neighbors, that small community? And that's really important here, too.
>
> . . . .
>
> And so the question is what do we, as a community—how do we value that? It's been 14 years. Mr. Zweizig would like to be done. At the very least, he would like your help to show him that what he's going through is real. So later on, if he needs to, when he Googles his name, it's not just a bunch of lawsuits he's had to file, and hopefully not for long, these things that are written out there, but there's something that says this is real.
>
> And then the bigger picture, it's not just Mr. Zweizig. It's so when our community looks, when you click and say, what is this thing, like what is it when you write terrible things about people on the Internet, that it's real.
>
> When the technology companies in San Francisco sit down and decide, what is our privacy policy or how are we going to deal with takedowns or whatever, it's another drop in the bucket to say that human lives matter and these things actually affect real people. So that's why I'm asking for $2 million. And I beg of you to award every penny of that.

The Court finds that many of these statements could reasonably be interpreted as a request by counsel that the jury hold Defendant liable rather than a request that the jury punish Defendant in awarding damages. Further, the Court has reviewed the rest of the trial transcript and finds no other instances where such comments were made. Thus, even if these comments could only be interpreted as asking the jury to improperly punish Defendant with its award, the alleged misconduct did not sufficiently permeate the entire proceeding to warrant a new trial. *See Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1285–86 (1984) (affirming the district court's decision to deny the defendant's motion for a new trial where isolated improper remarks

were made principally during opening and closing argument, the jury's damage award was not excessive, and the defendant made no objection).

In addition, Plaintiff offered undisputed testimony in support of the noneconomic damages award about the substantial impact that the blog had on his life and his emotional health. Plaintiff testified that he felt "absolute distress" when he first saw the blog. He felt he was being "stalked and terrorized at a pretty high level" and as though "somebody [had] taken [his] identity." Plaintiff described the blog as "a dark cloud that just follows [him] all the time" and invades everything in his life. He fundamentally altered the way he interacts with the world as a result of the blog, which uses both his name and his photo. In trying to keep a low profile, Plaintiff said he was limited in his ability to interact and network with other IT professionals, seek out guitar students, and put up webpages about his music. In his own words, Plaintiff has had to "anonymize himself." He also testified about how he watched the blog impact his family as it also names Plaintiff's fiancé. He said that the blog hangs over both of their heads. At times, Plaintiff was emotional in describing how Defendant's actions had impacted him. In light of this testimony and Plaintiff's demeanor at trial, the Court cannot find that the jury was improperly influenced by counsel's statements in rendering its damages award. This is not one of those "extraordinary cases" requiring a new trial.

B. Insufficiency of the Evidence

Defendant argues that there was insufficient evidence for the jury to find Defendant liable. This Court disagrees. In this case, the jury's verdict was not clearly against the weight of the evidence. Plaintiff testified as to the mental and emotional distress he suffered as a result of Defendant's actions. The evidence reasonably shows that Defendant aided and abetted Plaintiff's employer because, at the time that Defendant obtained rights from Defendant NDT to publish

information about the arbitration online, it was not administratively dissolved. *Comapre* Ex. 546 (license agreement dated January 2, 2015) *with* Ex. 599 (showing Defendant NDT was not administratively dissolved until April 3, 2015). Further, based on the contents of the blog, the jury could conclude that Defendant's motivation was retaliatory in nature. In other words, it could have concluded that without Plaintiff's participation in a protected legal action against Defendant NDT, Defendant would not have created the blog. Because the jury's verdict was not against the clear weight of the evidence in this case, the Court declines to grant Defendant a new trial on this basis. *See Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) ("While the trial court may weigh the evidence and credibility of the witnesses, the court is not justified in granting a new trial 'merely because it might have come to a different result from that reached by the jury.'").

    C. Improper Jury Instructions

Defendant moves for a new trial on the grounds that "several jury instructions were flawed." Def. Mot. 29, ECF 211. Defendant, however, did not make any objections to the Court's proposed jury instructions at trial, and at least one of the complained-of instructions was identical to the instruction proposed by Defendant. *Compare* Instruction No. 13, ECF 189, *with* Joint Proposed Instruction No. 24, ECF 166.

Federal Rule of Civil Procedure 51 requires parties to object to jury instructions on the record, "stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). Where an objection has not been properly preserved, "[a] court may consider a plain error in the instructions . . . if the error affects substantial rights." *Id.* at (d)(2); *see also Chess v. Dovey*, 790 F.3d 961, 970 (9th Cir. 2015) ("[W]hen a litigant in a civil trail fails to object to a jury instruction, we may review the challenged jury instruction for plain error."); *C.B. v. City of*

*Sonora*, 769 F.3d 1005, 1016–19 (9th Cir. 2014) (In reviewing civil jury instructions for plain error, the Ninth Circuit considers "whether (1) there was an error; (2) the error was obvious; and (3) the error affected substantial rights.")

The Court has reviewed the instructions and the applicable law and finds no error. For example, Defendant contends that the Court erred in giving Instruction No. 10, arguing that it misstates the "but-for" causation standard used in retaliation cases. But the instruction given required the jury to find that, in the absence of Defendant's unlawful motive, he would not have retaliated against Plaintiff. *See* Instruction No. 10, ECF 189 ("A plaintiff is 'subjected to an adverse employment action because of his participation in the protected activity' if he shows that an unlawful motive was a substantial factor in his adverse employment action, or, in other words, that the plaintiff would have been treated differently in the absence of the unlawful motive."). Moreover, the instruction given is consistent with the language used in recent Oregon appellate decisions, which state that: "in the context of . . . retaliation claims, we have observed that, to show causation, a 'plaintiff must prove that defendant's unlawful motive was a substantial factor in his termination, or, in other words, that [the plaintiff] would have been treated differently in the absence of the unlawful motive.'" *Harper v. Mount Hood Comm. College*, 283 Or. App. 207, 214 (2016) (citing *LaCasse v. Owen*, 278 Or. App. 24 (2016) (applying this test to a claim under ORS 659A.030(1)(f)); *see also* Or. Uniform Jury Instruction 59A.03 (defining "substantial factor").

D. Evidentiary Objections

Defendant also contends a new trial is warranted because the Court erred by: (1) not allowing Defendant to submit the original expert reports and testimony from the arbitration into evidence; (2) excluding Defendant's Exhibits 541 and 543; and (3) not requiring Plaintiff to

disclose the identities of his employers. The Court finds that it did not err in these evidentiary rulings and they did not result in an injustice to Defendant. At trial, Defendant was free to testify about the arbitration, his motivation for writing the blog, and the evidence underlying the blog posts.[5] Without asking about the identity of Plaintiff's employers, Defendant was free to question Plaintiff about his current and past employment in order to show an absence of noneconomic damages. And Exhibits 541 and 543—both involving issues between Defendant and Plaintiff's counsel in unrelated matters—were excluded because they are irrelevant to the legal claims in this case.

E. Post-Trial Contact with Juror 5

Defendant contends that he came into contact with Juror No. 5 after the trial. According to Defendant, Juror No. 5 suggested that the jury intended to punish Defendant with its verdict. "A juror's observations may not be used as grounds to grant a new trial absent exceptional circumstances." *U.S. v. 4.0 Acres of Land*, 175 F.3d 1133, 1140 (1999); *see also Longfellow v. Jackson Cty*, No. CV 06-3043-PA, 2007 WL 682455, at *1 ("I will not consider evidence about what a juror allegedly said to an attorney, after the jury was discharged, regarding the method the jury used to compute damages or the reasons underlying the verdict. A juror may not testify about matters intrinsic to the verdict."). Indeed, FRE 606(b) "prohibits a juror from testifying about the jury's deliberations or how the jurors reached their conclusions unless 'extraneous prejudicial information was improperly brought to the jury's attention.'" *4.0 Acres of Land*, 175 F.3d at 1140. Here, Defendant does not provide any evidence that suggests that the juror was

---

[5] Defendant also argues that this evidence would have allowed him to better articulate his defense that the information contained within the blog was "true." However, as the Court has previously noted, Judge Brown confirmed the arbitration award, which included the arbitrator's credibility determinations and findings of fact, in 2012. *See Nw. Direct Teleservices Inc. v. Max Zweizig*, No. 3:11-cv-00910-PK, ECF 46. Thus, the only purpose of this evidence here would have been to relitigate the merits of the arbitration proceeding.

10- OPINION & ORDER

influenced by such extraneous information. Rather, Defendant only contends that the juror provided him with information relevant to the jury's deliberation. Accordingly, the Court declines to grant a new trial on these grounds.

    F.  New Evidence

Defendant also argues that newly discovered evidence showing the number of visits to Defendant's blog and the timing of these visits warrants a new trial because it undermines Plaintiff's testimony. A new trial may be granted because of newly discovered evidence where "(1) the evidence was discovered after trial, (2) the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the case." *Defs. of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000). "Newly discovered evidence that would merely affect the weight and credibility of the evidence ordinarily is insufficient for a new trial." *Green By and Through Green v. City of Eureka*, 107 F.3d 16, 1997 WL 51471, at *1 (9th Cir. 1997) (internal citations omitted). In support of this argument, Defendant broadly states that this evidence was "not available or discovered until after trial." *See* Rote Decl. ¶¶ 2–12, ECF 212. Defendant offers no other justification for why this information was not available or discoverable with due diligence prior to trial. Accordingly, the Court declines to grant a new trial on this basis.

## II.    Objection to the Form of Judgment

Defendant objects to the form of Plaintiff's proposed judgment and argues that Oregon Revised Statutes ("ORS") § 31.710(2)(b), which caps noneconomic damages in certain cases to $500,000, applies to this case. Plaintiff, citing two recent state trial court decisions, argues that ORS 31.710 is inapplicable to employment claims. In the alternative, Plaintiff argues that the

application of the statute to this case would violate the remedy clause in Article I, section 10 of the Oregon Constitution. The Court agrees with Defendant and finds that the application of the statute in this case is not unconstitutional.

   A. Interpretation of ORS 31.710

The issue in this case is whether ORS 31.710 encompasses purely emotional injuries arising out of employment claims. ORS 31.710(1) provides:

> Except for claims subject to ORS 30.260 to 30.300 (Oregon Tort Claims Act) and ORS Chapter 656 (Workers' Compensation), in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000.

No Oregon appellate court appears to have directly addressed the applicability of ORS 31.710 to employment claims arising out of purely emotional injury. In *Tenold v. Weyerhaeuser Company*, however, the Oregon Court of Appeals applied this statute to employment claims seeking purely noneconomic damages. *See* 127 Or.App. 511, 518 (1994) (noting in passing that the language of the statute "limits noneconomic damages to $500,000 in any civil action'"). But in that case, the issue on appeal was the meaning of "action" and the constitutionality of ORS 31.710. *Id.* at 519–21. The Court therefore did not directly address the meaning or scope of the statute. Further, the claims at issue there were tort claims arising out of an employment relationship—malicious prosecution, intentional infliction of emotional distress, and defamation—rather than the statutory employment claims at issue here. *Id.* at 513.

In the absence of clear precedent, the Court turns to the three-part statutory interpretation framework laid out in by the Oregon Supreme Court in *State v. Gaines* to determine the intent of the legislature in drafting ORS 31.710. 346 Or. 160, 165 (2009); ORS § 174.020. First, the Court examines the text and the context of the statute. 346 Or. at 171 (2009) (citing *PGE v. Bureau of*

*Labor and Indus.*, 317 Or. 606, 610–11 (1993)). Next, the parties are "free to proffer legislative history to the court, and the court will consult it after examining the text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis." *Id.* at 172. Finally, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.*

The question in this case is what the Oregon legislature intended by capping noneconomic damages "in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage." Plaintiff suggests that ORS 31.710 applies only to claims arising from bodily injury, death, and property damage. Pl. Resp. Am. Obj. 2–3, ECF 200. Because Plaintiff's claim arises out of an unlawful employment practice, Plaintiff contends that the cap is inapplicable to this case. Defendant argues that both the text of the statute and the ordinary meaning of the phrase "including" suggest that the phrase "including emotional injury or distress" "should be read as a limited example of harm under a broad category of bodily injury." Def. Reply Am. Obj., 2–3, 9, ECF 202. Defendant further contends that a narrower interpretation of the statute would frustrate the purpose of the statute. *Id.* at 3.

The three Oregon trial courts to address this issue have come to different conclusions on the meaning of the statute. In a decision issued just last year, Multnomah County Circuit Court Judge Karin Immergut found that "'bodily injury' . . . includes claims for purely emotional injury under ORS 659A.030." *Pierce v. Daimler Trucks North America, LLC*, Case No. 15CV24701, at 4 (Mult. Cty Cir. Ct, July 19, 2017); *see also* Rote Decl. Ex. 11 at 4, ECF 203. In her decision, Judge Immergut relied on the text and context of the statute, the statute's clear exclusion for

claims under the Oregon Tort Claims Act and the Oregon Workers' Compensation Law, and the application of this statute by the Court of Appeals in *Tenold*. *Id.* at 3. She further noted that the goal of the legislature, as evidenced by the legislative history of the statute, was to reduce insurance premiums associated with tort litigation. *Id.* at 4.

By contrast, both Multnomah County Circuit Court Judge Michael Greenlick and Lane County Circuit Court Judge Marilyn E. Litzenberger offered narrower interpretations of ORS 31.710. Judge Greenlick found the cap was not intended to apply to (1) claims for purely emotional injury or distress or (2) claims for employment discrimination. *Loczi v. Daimler Trucks North America, LLC*, Case No. 14CV15365, at 3 (Mult. Cty Cir. Ct. Mar. 4, 2017); *see also* Christiansen Decl. Ex. 1 at 3–4, ECF 200. Specifically, he determined that the legislature only intended the cap to apply to claims for emotional injury or distress where those damages stemmed from bodily injury. *Id.* Similarly, Judge Litzenberger determined that the statute only applies to three types of civil actions: "the categories of claims to which the cap applies include claims arising out of bodily injury, death or property damage; and, by omission, not claims arising out of employment." *McMillan v. Li Ning Sports USA, Inc.*, No 110708760, 2013 WL 9591371, at *3 (Lane Cty Cir. Ct. Dec. 18, 2013); *see also* Christiansen Decl. Ex. 2.

Here, the Court finds Judge Immergut's interpretation more persuasive. First, the text of the statute itself supports Defendant's contention that this statute applies to employment cases seeking purely emotional distress damages. If the legislature had intended the statute to apply only to claims arising out of bodily injury, death, or property damage, the legislature could have so limited the scope of the statute. Instead, the legislature tethered the application of the cap to the type of damages sought in civil actions: "any civil action *seeking damages arising out of* bodily injury, including emotional injury or distress, death and property damages." ORS §

31.710 (emphasis added). Thus, it is the type of damages—not the type of civil claim—the legislature was ultimately concerned with.

Further, by its use of the word "including," the statute clarifies that emotional injury or distress is an example of bodily injury subject to the statute's cap. *See, e.g., State v. Kurtz*, 350 Or. 65, 75 (2011) ("Typically, statutory terms such as 'including' and 'including but not limited to' . . . convey an intent that an accompanying list of examples be read in a nonexclusive sense."); *State v. Walker*, 356 Or. 4, 14 (2014) (noting that "includes" introduces an illustrative list); "Include," Black's Law Dictionary (10th ed. 2014) ("The participle *including* typically indicates a partial list.") This does not evidence a requirement that the emotional injury stem from a physical harm in some way.[6] And the Court's interpretation—that emotional distress is a type of bodily injury—is not inconsistent with Oregon case law, which has recognized that certain claims for purely emotional distress are considered claims for injury to one's person under Oregon law. *See Rains v. Stayton Builders Mart, Inc.*, 289 Or. App. 672, 687–88 (2018) (noting that an emotional harm is an "injury to person" or "bodily injury").

Second, the purpose of the statute was to reduce liability insurance premiums in tort actions. *See Tenold*, 127 Or. App. at 520 ("According to the legislative history, the purpose of imposing a cap on noneconomic damages was to stabilize insurance premiums and to decrease the costs associated with tort litigation."); *see also* Rote Decl. Ex. 4 (Report from Joint Interim Task Force on Liability Insurance) ("The Task Force voted to: Limit noneconomic damages to $500,000."). In the summary of the proposed tort reform bill, the legislature further signaled that

---

[6] Indeed, "[i]t is hornbook law that the use of the world including indicates that the specified list is illustrative, not exclusive." *See e.g. Puerto Rico Maritime Shipping Auth. v. ICC*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981); *see also Samantar v. Yousuf,* 560 U.S. 305, 317 (2010) ("It is true that use of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive.") (citing 2A N. Singer & J. Singer, Sutherland Statutory Construction § 47.7, p. 305 (7th ed.2007) ("[T]he word 'includes' is usually a term of enlargement, and not of limitation.")).

the purpose of the cap was "to cap out the 'non-economic' portion of *any* award." Rote Decl. Ex. 5 (emphasis added). Although the noneconomic damages cap was "included in a larger bill aimed at tort reform generally, the noneconomic damages cap itself was labeled as a stand-alone provision within the bill." *Vasquez v. Double Press Mfg., Inc.* 288 Or. App. 503, 519 (2017) (citing Or. Laws 1987, ch. 774 § 6). By adopting a broader understanding of "damages arising out of bodily injury" to include damages arising out of purely emotional injury, the Court's interpretation better fulfills the legislature's goal. By contrast, a narrower reading—requiring any emotional injury to be connected to a physical harm—would result in the exclusion of certain tort claims, such as those for Intentional or Negligent Infliction of Emotional Distress, from the damages cap. Such an approach would therefore be inconsistent with the legislature's goal of reducing the cost of tort litigation.

In light of the broad language of the statute and the legislative history, the Court finds that the legislature intended ORS 31.710 to apply to employment actions where the damages sought are purely emotional in nature. Accordingly, Plaintiff's damages in this case are subject to Oregon's $500,000 noneconomic damages cap.

    B.  Constitutionality of ORS 31.710

Plaintiff also argues that, as applied to his case, ORS 31.710 is unconstitutional because a reduction in his damages by 50% "would not leave Plaintiff with a substantial remedy and would therefore violate the remedy clause of Article I, section 10 of the Oregon Constitution." Pl. Sur-Reply Am. Obj, ECF 210. Defendant argues that the $500,000 Plaintiff would receive after the application of the damages cap is substantial and passes constitutional muster. Def. Reply Am. Obj. 5. The Court agrees with Defendant.

In *Vasquez v. Double Press Manufacturing, Inc.*, the Oregon Court of Appeals addressed, for the first time after the Supreme Court's decision in *Horton v. Oregon Health & Science University*, 359 Or. 168 (2016), a challenge to the constitutionality of ORS 31.710 under Article I, section 10 of the Oregon Constitution. 288 Or. App. 503 (2017). Article I, section 10 provides: "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." Because ORS 31.710 does not deny a remedy completely, the Court of Appeals held that the statute is only unconstitutional if the remedy provided is not "substantial." *Id.* (citing *Horton*, 359 Or. at 219). "Whether a remedy is 'substantial' is a question that [the court] can answer only on a case-by-case basis, because a capped remedy could provide complete relief for many claimants." *Id.* But "a remedy that is only a paltry fraction of the damages that the plaintiff sustained will unlikely be sufficient." *Id.* (citation omitted).

In *Vasquez,* the Court of Appeals determined that the application of the cap "would leave plaintiff with a remedy that is only a 'paltry fraction' of the damages that he sustained and would otherwise recover." *Id.* at 525–26. There, the court began by noting that, under the common-law model, the plaintiff would have been entitled to the entire amount of the noneconomic damages, and that the hard cap placed by the legislature in 1987—without any mechanism for adjustment—was a dramatic departure from the remedy the common law provided. *Id.* at 524–25. It went on to find that the legislature's concern with controlling the rising cost of liability insurance could not "bear the weight of the dramatic reduction in noneconomic damages that the statute requires for the most grievously injured plaintiffs." *Id.* at 525. The plaintiff in that case— having been "essentially cut . . . in half at the base of his spine, leaving him permanently

17- OPINION & ORDER

paraplegic"—was such a grievously injured plaintiff. *Id.* And the application of the damages cap would have left Plaintiff with $1,839,090 of the $6,199,090 he would have received for his significant injuries without the cap. *Id.*

Similarly, in *Rains v. Stayton Builders Mart, Inc.*, the Oregon Court of Appeals again found that a reduction in damages under the cap was unconstitutional. 289 Or. App. 672, 691–92 (2018). There, the plaintiff "fell almost 16 feet to the ground when a defective wood board broke at his job site." *Id.* at 675. The fall rendered him a paraplegic. *Id.* The plaintiff and his wife subsequently brought strict products liability and loss of consortium claims in an action against the retailer and manufacturer of the board. *Id.* Applying the holding in *Vasquez*, the Court of Appeals concluded that reducing the plaintiff's noneconomic damages from $2,343,750 to $500,000 would be unconstitutional given the nature of plaintiffs' injuries. *Id.* at 691. The Court similarly found that a reduction in the plaintiff's wife's award for loss of consortium from $759,375 to $500,000 was a "bare reduction in her noneconomic damages without any identifiable statutory *quid pro quo* or constitutional principle that the cap takes into consideration." *Id.* at 691 (citing *Vasquez*, 288 Or. App. at 526); *see also id.* at 692 ("[W]e do not see a principled reason to conclude that reducing Mitzi's noneconomic damages award by $259,375 in the circumstances of this case leaves her with a 'substantial' remedy.").

This case, however, is distinguishable from *Rains* and *Vasquez*. Though, at the time that ORS 31.710 was passed, the common-law remedial scheme would have provided Plaintiff with his full damages award, Plaintiff is not the type of "grievously injured" plaintiff that the Oregon Court of Appeals was concerned with in the decisions described above. The plaintiffs in *Vasquez* and *Rains* both suffered debilitating physical injuries as a result of serious workplace accidents. Similarly, the plaintiff's wife in *Rains* suffered a grievous emotional injury and was accordingly

compensated for a lifetime loss of consortium as the result of her husband's paraplegia. Accordingly, the remedies these individuals would have received had the cap been imposed were not "substantial" remedies. Certainly, Plaintiff has suffered significant emotional distress over the past few years as a result of Defendant's actions. But when viewed in light of the case law described above and the circumstances of this case, the Court finds that a $500,000 noneconomic damages award is still a substantial remedy within the meaning of Article I, section 10 of the Oregon Constitution.

### III.     Attorney's Fees

Defendant also objects to the Plaintiff's request for attorney's fees. He argues that the issue of attorney's fees was decided in the 2010 arbitration decision applying the terms of the employment agreement to the parties' litigation.  The Court finds this objection without merit. First, as the Court previously noted, the terms of the employment agreement are not applicable to this case. Opinion & Order, ECF 96 at 4–7; Order, ECF 133 at 8 n.5. Additionally, Plaintiff is permitted to recover attorney's fees for successful claims brought under ORS 659A.030. *See* ORS 659A.885(1) ("In any action under this subsection, the court may allow the prevailing party costs and reasonable attorney fees at trial and on appeal.").

///

///

///

///

///

///

///

## CONCLUSION

The Court DENIES Defendant's Motion to Set Aside Judgment [211]. However, the Court finds that Plaintiff's award for noneconomic damages is capped at $500,000 pursuant to ORS 31.710(1). The parties shall submit a joint proposed form of judgment within fourteen days of this Order.

IT IS SO ORDERED.

Dated this \_\_\_25\_\_\_ day of July, 2018.

_____
MARCO A. HERNÁNDEZ
United States District Judge